Gary L. Cooper - Idaho State Bar #1814
J. D. Oborn - Idaho State Bar #9294
COOPER & LARSEN, CHARTERED
151 North Third Avenue, Second Floor
P.O. Box 4229
Pocatello, ID 83205-4229
Telephone:     (208) 235-1145
Facsimile:     (208) 235-1182
Email:          gary@cooper-larsen.com
                jd@cooper-larsen.com
E-filing:       cooperobornfiling@cooper-larsen.com

*Counsel for Defendant Arrowhead Engineered Products, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY, as subrogee of PRECISION, INC., d/b/a PRECISION BOATS,<br><br>    Plaintiff,<br><br>vs.<br><br>SKIER'S CHOICE, INC.; INDMAR PRODUCTS CO., INC.; ARROWHEAD ENGINEERED PRODUCTS, INC.; and/or JOHN DOES I-X, whose true names are unknown,<br><br>    Defendants. | Case No.<br><br>**NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441** |

### <u>NOTICE OF REMOVAL</u>

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

   PLEASE TAKE NOTICE that Defendants Skier's Choice, Inc.; Indmar Products Co., Inc.;

and Arrowhead Engineered Products, Inc., ("Defendants") hereby remove to this Court the state

court action described below.

**Notice of Removal Under 29 U.S.C. § 1441  Page - 1**

1. On or about October 20, 2021, an action was commenced by the above-captioned Plaintiffs in the Seventh Judicial District, in and for the County of Bonneville, State of Idaho, including Plaintiffs Sentry Select Insurance Company, as subrogee of Precision, Inc., d/b/a/ Precision Boats, and Defendants as captioned above, case number CV10-21-6208.

2. Defendant Arrowhead Engineered Products, Inc., was served the Complaint and Summons in the case described in Paragraph 1, on November 22, 2021. Defendant Skier's Choice, Inc. was served the Complaint and Summons in the case described in Paragraph 1, on November 22, 2021. Defendant Indmar Products Co., Inc. was served the Complaint and Summons in the case described in Paragraph 1, on December 2, 2021. Pursuant to 28 U.S.C. § 1446, this Notice has been timely filed. A copy of the Summons and Complaint served upon the respective Defendants in the state court action are filed concurrently herewith.

3. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441 in that there is complete diversity of citizenship among Defendants, and that the amount in controversy exceeds $75,000.

4. That all Defendants stipulate to this removal, as indicated by the signatures of their respective counsel below.

5. That the docket sheet and all pleadings and filings in the state court action described in Paragraph 1 are attached hereto as Exhibit A.

WHEREFORE, Defendants pray that this action be removed to the United States District Court for the District of Idaho.

DATED this __14___day of December, 2021.

COOPER & LARSEN CHARTERED


____/s/____Gary Cooper_____
GARY COOPER
Attorney for Arrowhead Engineered Products, Inc.




HAWLEY TROXELL


____/s/___Benjamin C. Ritchie_____
BENJAMIN C. RITCHIE
Attorney for Skier's Choice, Inc.




MOORE ELIA & KRAFT LLP


___/s/___Steve Kraft_____
STEVE KRAFT
Attorney for Indmar Products Co., Inc.

## **<u>CERTIFICATE OF SERVICE</u>**


I HEREBY CERTIFY that on the __14___ day of December, 2021, I electronically filed the foregoing with the Clerk of the Court using the Idaho I-Court E-File system and requested that a Notice of Filing be sent to the following persons:

James D. Ruchti
Ruchti & Beck Law Offices
Oakley Building
1950 E Clark Street, Suite 200
Pocatello, ID  83201
rb-efile@idaholaw.us


          ____ /s/ Anthony B. Budge_____


**Notice of Removal Under 29 U.S.C. § 1441  Page - 4**

## Case Information

CV10-21-6208 | Sentry Select Insurance Company, as subrogee of Precision, Inc./Precision Boats Plaintiff, vs. Skier's Choice, Inc., Indmar Products Co., Inc., Arrowhead Engineered Products, Inc., John Does I-X Defendant.

Case Number
CV10-21-6208

File Date
10/20/2021

Court
Bonneville County District Court

Case Type
AA- All Initial District Court Filings (Not E, F, and H1)

Judicial Officer
Pickett, Bruce L.

Case Status
Active - Pending

## Party

Plaintiff
Sentry Select Insurance Company, as subrogee of Precision, Inc./Precision Boats

Active Attorneys ▾
Lead Attorney
Ruchti, James D.
Retained

Defendant
Skier's Choice, Inc.

Active Attorneys ▾
Attorney
Thomas, Stephen Raber
Retained

Lead Attorney
Ritchie, Benjamin Craig
Retained

Attorney
Strobel, Austin Thomas
Retained

Defendant
Indmar Products Co., Inc.

Defendant
Arrowhead Engineered Products, Inc.

Defendant
John Does I-X

## Events and Hearings

| 10/20/2021 New Case - District Civil |
|---|

| 10/20/2021 Civil Case Information Sheet |
|---|

| 10/20/2021 Summons Issued |
|---|

| 10/20/2021 Summons Issued |
|---|

| 10/20/2021 Summons Issued |
|---|

| 10/20/2021 Complaint For Personal Injury or Other Claims (Over $10,000) |
|---|

11/30/2021 Affidavit / Return of Service ▼

Comment
Affidavit of Service (Skier's Choice)

11/30/2021 Affidavit / Return of Service ▼

Comment
Affidavit of Service (Arrowhead Engineered Products)

| 12/06/2021 Notice of Appearance |
|---|

| 12/06/2021 Civil Case Information Sheet |
|---|

12/07/2021 Affidavit / Return of Service ▾

Comment
- Indmar Products

12/13/2021 Answer ▾

Comment
Defendant Skier's Choice, Inc.'s Answer to Complaint and Demand for Jury Trial

## Financial

Sentry Select Insurance Company, as subrogee of Precision, Inc./Precision Boats

| | | | | |
|---|---|---|---|---|
| Total Financial Assessment | | | | $221.00 |
| Total Payments and Credits | | | | $221.00 |
| 10/20/2021 | Transaction Assessment | | | $221.00 |
| 10/20/2021 | EFile Payment | Receipt # 31610-2021-R10 | Sentry Select Insurance Company, as subrogee of Precision, Inc./Precision Boats | ($221.00) |

Skier's Choice, Inc.

| | | | | |
|---|---|---|---|---|
| Total Financial Assessment | | | | $136.00 |
| Total Payments and Credits | | | | $136.00 |
| 12/6/2021 | Transaction Assessment | | | $136.00 |
| 12/6/2021 | EFile Payment | Receipt # 35872-2021-R10 | Skier's Choice, Inc. | ($136.00) |

Electronically Filed
10/20/2021 3:40 PM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: Mary Griffith, Deputy Clerk

James D. Ruchti (ISB # 6366)
RUCHTI & BECK LAW OFFICES
Oakley Building
1950 E. Clark Street, Suite 200
Pocatello, Idaho 83201
Telephone No. (208) 478-5100
Facsimile No. (208) 232-5100
iCourt/E-Service Email:  rb-efile@idaholaw.us

*Attorneys for Plaintiff*

IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT

STATE OF IDAHO, IN AND FOR THE COUNTY OF BONNEVILLE

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY, as subrogee of PRECISION, INC., d/b/a PRECISION BOATS,<br><br>          Plaintiff,<br><br>vs.<br><br>SKIER'S CHOICE, INC.; INDMAR PRODUCTS CO., INC.; ARROWHEAD ENGINEERED PRODUCTS, INC.; and/or JOHN DOES I-X, whose true names are unknown,<br><br>          Defendants. | CASE NO.   CV10-21-6208<br>                _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Fee Category: AA<br>Fee: $221.00 |

COMES NOW Plaintiff Sentry Select Insurance Company, as subrogee of Precision, Inc., d/b/a Precision Boats, and for causes of action against the Defendants, complains and alleges as follows:

## I.    NATURE OF THE ACTION

1.    This action seeks to recover for damages caused by defects in a recreational boat.

2.    Defendants SKIER'S CHOICE, INC.; INDMAR PRODUCTS CO., INC.; ARROWHEAD ENGINEERED PRODUCTS, INC.; and JOHN DOES I-X whose true names are unknown, hereinafter referred to jointly as "Defendants," developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or performed other work in connection with a 2020 Skier's Choice Supra SL Model recreational boat (hereinafter the "Boat") and its component parts.

3.    Defendant Skier's Choice, Inc. (hereinafter "Skier's Choice") developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, and warranted the Boat.

4.    The Boat incorporated an engine and associated components designed, manufactured and sold by Defendant Indmar Products Co., Inc. (hereinafter "Indmar").

5.    The Boat also incorporated an alternator and associated components designed, manufactured and sold by Defendant Arrowhead Engineered Products, Inc. (hereinafter "Arrowhead").

6.    Certain models of the 2020 Supra SL Boats included a defective connector that attaches the alternator to the engine wire harness.  According to an August 5, 2019 service bulletin, Indmar reported that the "wire harness was wired incorrectly from our supplier.  The improper wiring can result in the failure in the alternator's voltage regulator over time."

7.      In addition, Indmar previously identified problems with alternators supplied for Supra model boats in a safety recall dated May 15, 2019.  That recall indicated that certain alternators provided with Supra boats "are at risk of having an internal failure of the voltage regulator that could result in an alternator thermal event and possible engine shut down."

8.      Plaintiff is an insurer which made payments to, or on behalf of, its insured (hereinafter "Plaintiff's Insured") for damages caused by the Defendants' defective products and as a result of such payments, is subrogated to the rights of its insured as against the Defendants.

9.      Plaintiff has suffered harm as a result of the Defendants' actions because the Defendants' boat and incorporated component parts contained defects which caused a fire that damaged Plaintiff's Insured's property and the property of others for which Plaintiff's Insured was responsible and caused Plaintiff's Insured to incur business income losses, extra expenses and other damages.

## II.      PARTIES

10.      Plaintiff Sentry Select Insurance Company (hereinafter "Sentry") is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business located at 1800 North Point Drive in Stevens Point, Wisconsin.

11.      At all times relevant hereto, Plaintiff's Insured, Precision Inc., d/b/a Precision Boats (hereinafter "Precision Boats"), owned and operated a boat sales and service business at a property located at 2199 North Woodruff Avenue in Idaho Falls, Idaho (hereinafter the "Property").

12.     Prior to October 27, 2019, Sentry issued a policy of insurance to Precision Boats, Policy Number 2549921001 (hereinafter, the "Policy") which insured the Property, Precision Boats and its business interests, as well as its business property and the property of others located at the Property.  The Policy was in effect on October 27, 2019.

13.     Defendant Skier's Choice, Inc. is a corporation organized and existing under the laws of the State of Oklahoma with its principal place of business located at 1717 Henry G. Lane Street in Maryville, Tennessee.

14.     At all times relevant hereto, Skier's Choice designed, manufactured and sold recreational boats throughout the United States and in Bonneville County, Idaho.

15.     Defendant Indmar Products Co., Inc. a corporation organized and existing under the laws of the State of Tennessee with its principal place of business located at 5400 Old Millington Road in Millington, Tennessee.

16.     At all times relevant hereto, Indmar designed, manufactured and sold marine engines and associated components that were incorporated in Supra SL model boats manufactured and sold by Skier's Choice.

17.     Defendant Arrowhead Engineered Products, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3787 95th Avenue Northeast, Suite 250 in Blaine, Minnesota.

18.     At all times relevant hereto, Arrowhead designed, manufactured and sold alternators and other electrical components that were incorporated into Supra SL model boats manufactured by Skier's Choice.

19.     John Does I-X are fictitiously named defendants who may be wholly or partially responsible and at fault for Plaintiff's damages.  In particular, these fictitiously

named defendants developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected and warranted defective components in the Supra SL Model boat manufactured by Skier's Choice responsible for the October 27, 2019 fire at issue.

20.     At all times relevant hereto, the Defendants developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected and warranted the Supra SL Model boat and its components.

21.     Upon information and belief, Defendants were each a "Seller" and/or "Manufacturer" and/or were engaged in the business of manufacturing and/or selling the Supra SL model boat and its incorporated components which are the subject of this cause of action.

22.     All acts, conduct, omissions, and breaches alleged in this Complaint occurred at and/or were first discovered by Plaintiff's Insured and/or their agent at the Property on or about October 27, 2019.

23.     The Defendants purposely marketed, distributed, sold and/or placed the subject pre-manufactured products into the stream of interstate commerce with the expectation that their products would be sold to, installed for the benefit of, and/or used by, residents and/or entities within the State of Idaho.

24.     Pursuant to Idaho law and the subrogation provisions of the Policy, and as a result of the payments it made to its insured, Plaintiff is subrogated and assigned the rights and benefits of its insured and therefore brings the claims alleged in this lawsuit against the Defendants and for which Plaintiff now seeks compensation in this cause of action.

### III.   VENUE AND JURISDICTION

25.     Jurisdiction and venue are properly with this Court pursuant to I.C. §§ 1-705, 5-404 and 5-514, and this action is appropriately filed in Bonneville County, State of Idaho.

26.     Furthermore, the amount sought against the Defendants meets the monetary jurisdictional requirement for the District Court of Idaho.

### IV.   FACTUAL ALLEGATIONS

27.     At all times relevant hereto, Plaintiff's Insured, Precision Boats, owned and operated a boat sales and service business at the Property in Idaho Falls, Idaho.

28.     On or about July 23, 2019, Lance Roberts and Brittany Roberts of Victor, Idaho placed an order through Precision Boats to purchase a 2020 Supra SL boat manufactured by Defendant Skier's Choice.

29.     On or about August 22, 2019, the Boat was delivered to Mr. Roberts.

30.     In early September, 2019, the Boat was brought back to Plaintiff's Insured to address an overheating issue and to perform winterization work.

31.     Thereafter, the Boat was transferred back to Mr. Roberts.

32.     The Boat was brought back to Precision Boats on or about October 21, 2019 for additional repair work.

33.     Precision Boats engaged in some troubleshooting work on October 25, 2019 in an effort to address the overheating problem.

34.     On the evening of October 25, 2019, Precision Boats employees parked the Boat in one of the mechanic bays at the Property.

35.     On Sunday morning, October 27, 2019, a fire ignited in the engine compartment for the Boat.  The ignition of the fire was recorded in a security video.

36.     The fire spread through the Property causing extensive damage to Precision Boats' buildings, equipment and inventory.  In addition, the fire damaged boats, owned by other individuals, that were stored at the Property.

37.     Plaintiff's investigation determined that the fire was caused by an electrical failure in the Boat's engine compartment.  Specifically, there was a failure in the voltage regulator for the Boat's alternator.

38.     Prior to the fire, the manufacturer of the Boat's engine, Indmar, issued a service bulletin dated August 5, 2019, advising that certain Supra SL boats had been equipped with a defective connector that attaches the Boat's alternator to the engine wire harness.  The service bulletin advised that the improperly wired connector could "result in the failure of the alternator's voltage regulator over time."

39.     In addition, a prior Indmar safety recall dated May 15, 2019 advised that certain Indmar engines that were equipped with a 230-amp alternator were "at risk of having an internal failure of the voltage regulator that could result in an alternator thermal event and possible engine shut down."

40.     The Indmar safety recalls dated May 15, 2019 and August 5, 2019 failed to warn of any risk of fire due to the defects identified in those notices.

41.     Defendant Skier's Choice developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or performed other work in connection with the 2020 Supra Model SL Boat.  Skier's Choice impliedly and/or explicitly represented that the Boat and its component parts were

safe products, of merchantable quality and fit for their intended and reasonably foreseeable uses.

42.     Defendant Indmar developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or performed other work in connection with its marine engines and associated components that were incorporated in the Boat.  Indmar impliedly and/or explicitly represented that its marine engines and associated components were safe products, of merchantable quality and fit for their intended and reasonably foreseeable uses.

43.     Defendant Arrowhead developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or performed other work in connection with its alternator and other electrical products installed in the Boat.  Arrowhead impliedly and/or explicitly represented that its alternator and other electrical products were safe products, of merchantable quality and fit for their intended and reasonably foreseeable uses.

44.     Defendants John Does I-X developed, designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or performed other work in connection with its defective components installed in the Boat.  Defendants John Does I-X impliedly and/or explicitly represented that its defective components were safe products, of merchantable quality and fit for their intended and reasonably foreseeable uses.

45.     Despite their knowledge regarding their products, the Defendants failed to disclose to customers or prospective purchasers that the 2020 Supra SL Boat and its incorporated components including, but not limited to, its engine, alternator and wiring

connections, contained inherent defects that could cause electrical failures and fires and such defects were present when the Boat and its incorporated components were sold.

46.     Precision Boats had no way of knowing that the Boat and its incorporated components were defective at the time of sale.

47.     In addition, the Defendants failed to provide consumers, and other parties who might reasonably come into contact with and work on the Boat and its component parts, with any warnings or instructions as to the risk of fire posed by the Boat and its component parts and failed to provide warnings and adequate instructions for the repair of defects present in the Boat to prevent potentially catastrophic losses.

## V.     CAUSES OF ACTION

### COUNT I - STRICT LIABILITY
### DESIGN DEFECT
### (SKIER'S CHOICE, INC.)

48.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

49.     Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the defective 2020 Supra SL Boat.

50.     The Boat that Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold was defective in its design and was defective and unreasonably dangerous when it left the control of Skier's Choice.

51.     At the time the Boat was sold, it was in the same defective and unreasonably dangerous condition in which it left the Defendant's possession and control.

52.     Plaintiff's Insured was a member of the class of persons that Defendant Skier's Choice should have reasonably foreseen as being subject to the harm caused by the Boat's defective and unreasonably dangerous condition.

53.     Defendant Skier's Choice knew, or should have known, that the Boat contained non-obvious dangers in its design.

54.     The foreseeable risks associated with the defective and dangerous design of the Boat exceeded the benefits associated with its design.

55.     Defendant Skier's Choice's Boat was defectively designed in one or more of the following ways:

      a.     Defendant designed the Boat without concern for safety and performance;

      b.     Defendant designed the Boat without concern for an unreasonable risk of harm;

      c.     Defendant designed the Boat without concern that it endangered the real and business property of Plaintiff's Insured as well as the property of others;

      d.     Defendant failed to properly test and inspect the Boat and its component parts during the design stage prior to production;

      e.     Defendant designed the Boat without concern for appropriate material and component selection;

      f.     Defendant designed the Boat without concern for maximum functionality;

g.     Defendant designed the Boat without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.     Defendant designed the Boat without proper concern for the type of wiring connectors and harnesses to be utilized in the Boat's electrical system;

i.     Defendant designed the Boat without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

j.     Defendant defectively designed the Boat in other ways under the circumstances to be determined.

56.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Boat and Defendant Skier's Choice's aforesaid acts and/or omissions, for which the Defendant is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

57.     As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT II – STRICT LIABILITY
## MANUFACTURING DEFECT
## (SKIER'S CHOICE, INC.)

58.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

59.     Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the defective 2020 Supra SL Boat.

60.     The Boat that Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold was defective and unreasonably dangerous when it left the Defendant's control.

61.     At the time the Boat was sold, it was in the same defective and unreasonably dangerous condition in which it left the Defendant's possession and control.

62.     Plaintiff's Insured was a member of the class of persons that Defendant Skier's Choice should have reasonably foreseen as being subject to the harm caused by the Boat's defective and unreasonably dangerous condition.

63.     Defendant Skier's Choice knew, or should have known, that the Boat contained non-obvious dangers in the way in which it was manufactured and constructed.

64.     The foreseeable risks associated with the defective and dangerous manner in which the Boat was manufactured exceeded the benefits associated with the Boat.

65.     Defendant's Boat was defectively manufactured in one or more of the following ways:

     a.     Defendant manufactured the Boat without concern for safety and performance;

     b.     Defendant manufactured the Boat without concern for an unreasonable risk of harm;

c.      Defendant manufactured the Boat without concern that it endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.      Defendant failed to properly test and inspect the Boat and its component parts before they left the Defendant's control;

e.      Defendant manufactured the Boat without concern for appropriate material and component selection;

f.      Defendant manufactured the Boat without concern for maximum functionality;

g.      Defendant manufactured the Boat without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant manufactured the Boat without proper concern for the type of wiring connectors and harnesses to be utilized in the Boat's electrical system;

i.      Defendant manufactured the Boat, and supplied repair facilities such as the one operated by Plaintiff's Insured, with incorrectly assembled wiring connectors and harnesses to be utilized in the Boat's electrical system;

j.      Defendant manufactured the Boat with a defective alternator;

k.      Defendant manufactured the Boat without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

l.     Defendant defectively manufactured the Boat in other ways under the circumstances to be determined.

66.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Boat and Defendant Skier's Choice's aforesaid acts and/or omissions, for which the Defendant is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

67.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT III - STRICT LIABILITY
## FAILURE TO WARN/ INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
## (SKIER'S CHOICE, INC.)

68.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

69.    Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the defective 2020 Supra SL Boat.

70.    The Boat that the Defendant developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold was defective in its design and manufacture and it was defective and unreasonably dangerous when it left the Defendant's control.

71.     At the time the Boat was sold, it was in the same defective and unreasonably dangerous condition in which it left the Defendant's possession and control.

72.     Plaintiff's Insured was a member of the class of persons that Defendant Skier's Choice should have reasonably foreseen as being subject to the harm caused by the Boat's defective and unreasonably dangerous condition.

73.     Defendant knew, or should have known, that the Boat contained non-obvious dangers and that purchasers and/or servicers of the Boat would not comprehend the danger without an adequate warning.

74.     Defendant knew, or should have known, that the Boat and its component parts, including but not limited to its alternator, the alternator's voltage regulator and the connector that attached the alternator to the engine wiring harness, were defective and susceptible to failure under expected conditions and that consumers and servicers of the Boat could not appreciate the risk caused by the defects nor could they adequately identify and remediate the potential defects because of inadequate instructions, warnings and service bulletins provided by the Defendant.

75.     Defendant failed to inform Plaintiff's Insured as to the Boat's susceptibility for sudden and catastrophic failure and fire.

76.     Defendant failed to warn purchasers and servicers of the Boat that the identified defects in the alternator, the alternator's voltage regulator and the wiring connector that attached the alternator to the engine wiring harness could cause electrical malfunctions and/or failures that could result in a fire.

77.     The Boat was defective due to inadequate warnings and inadequate inspection and testing and inadequate reporting regarding the results of quality control testing and safety inspections or lack thereof.

78.     Had Plaintiff's Insured been adequately warned and/or instructed concerning the likelihood, and the manner in which, the Boat could suffer a catastrophic electrical failure and fire, they would have taken steps to avoid the fire that occurred.

79.     Defendant Skier's Choice, upon learning that its Boat could suffer catastrophic failures and fires had a post-sale duty to warn purchasers and servicers of the possibility that catastrophic failures and fire could result even when the Boat was used for its intended purpose.

80.     The Boat was distributed with no warnings or, if any, with inadequate warnings for the dangers presented.

81.     A product is defective because of inadequate instruction or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

82.     A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed.  A warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated.  An adequate warning not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings may also be inadequate based on their form, manner of expression or lack of exigency.

83.     The Boat was defective because Defendant Skier's Choice failed to give reasonable warnings of the danger posed by the defects in the Boat; and/or failed to give reasonably complete instructions on the proper use of the Boat; and/or failed to provide reasonable warnings regarding the likelihood that the defects in the Boat could start a fire; and/or failed to provide complete and understandable instructions regarding the manner in which any identified defects in the Boat should be remediated when Defendant, by exercising reasonable diligence, could have made such warnings and/or instructions available to Plaintiff's Insured.

84.     Defendant Skier's Choice provided no warnings or the warnings were inadequate or provided inadequate instruction in one or more of the following ways:

    a.     Defendant provided no warning of the defects contained in the Boat;

    b.     Defendant's warnings, if any, were inadequate because they failed to disclose all inherent risks;

    c.     Defendant's warnings, if any, were inadequate because they failed to convey a fair indication of the nature of the dangers involved;

    d.     Defendant's warnings, if any, were inadequate because they failed to warn with the degree of intensity demanded by the nature of the risk;

    e.     Defendant's warnings, if any, were inadequate because they failed to communicate sufficient information as to the inherent dangers;

    f.     Defendant's warnings, if any, were inadequate because they failed to warn of dangers that arise during known or reasonably foreseeable uses of the product;

g.      Defendant's warnings, instructions, service bulletins and/or recalls failed to warn of the specific risks posed by the defects in the Boat including, but not limited to, the risk of catastrophic electrical failures and fires;

h.      Defendant's warnings, instructions, service bulletins and/or recalls failed to provide reasonable and understandable instructions regarding the correct manner in which any defects in the Boat could be identified and remediated; and

i.      Defendant's warnings, instructions, service bulletins and/or recalls were inadequate in other ways, under the circumstances, to be determined.

85.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Boat and the inadequate warnings and instructions provided with regard to the Boat, and Defendant's aforesaid acts and/or omissions, for which Defendant Skier's Choice is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

86.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT IV – NEGLIGENCE
## NEGLIGENT DESIGN
## (SKIER'S CHOICE, INC.)

87.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

88.     Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold a defective Boat which was brought to Plaintiff's Insured's business for repair and maintenance.

89.     At the time the Boat was sold, it was in the same dangerous and defective condition as when it left the Defendant's possession and control.

90.     Plaintiff's Insured was a member of the class of persons that Defendant Skier's Choice should have reasonably foreseen as being subject to the harm caused by the Boat's defective and unreasonably defective condition.

91.     Defendant Skier's Choice was negligent in that it failed to use reasonable care when it developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the Boat.

92.     The foreseeable risk associated with the dangerous design and manufacture of the Boat exceeded the benefits associated with the design of the Boat.

93.     As the manufacturer and/or seller of a consumer product, Defendant Skier's Choice owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide a product that would perform as intended and expected.  Defendant owed a duty to disclose the defects that it knew or should have known existed yet failed to do so to the detriment of Plaintiff's Insured.

94.     Defendant Skier's Choice breached its duties in one or more of the following ways:

        a.      Defendant knew or should have known that the Boat was designed without concern for safety and performance;

b.      Defendant knew or should have known that the Boat was designed without concern for an unreasonable risk of harm;

c.      Defendant knew or should have known that the Boat was designed without concern that it endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.      Defendant failed to properly test and inspect the Boat and its component parts during the design stage prior to production;

e.      Defendant knew or should have known that the Boat and its component parts were designed without concern for appropriate material and component selection;

f.      Defendant knew or should have known that the Boat was designed without concern for maximum functionality;

g.      Defendant knew or should have known that the Boat was designed without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant knew or should have known that the Boat was designed without proper concern for the type of wiring connectors and harnesses to be utilized in the Boat's electrical system;

i.      Defendant knew or should have known that the Boat was designed without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

j.      Defendant negligently designed the Boat in other ways under the circumstances to be determined.

95.     As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Skier's Choice is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

96.     As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT V – NEGLIGENCE
## NEGLIGENT MANUFACTURE
## (SKIER'S CHOICE, INC.)

97.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

98.     Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold a defective Boat which was brought to Plaintiff's Insured's business for repair and maintenance.

99.     At the time the Boat was sold, it was in the same dangerous and defective condition as when it left the Defendant's possession and control.

100.    Plaintiff's Insured was a member of the class of persons that Defendant Skier's Choice should have reasonably foreseen as being subject to the harm caused by the Boat's defective and unreasonably dangerous condition.

101.   Defendant Skier's Choice was negligent in that it failed to use reasonable care when it developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the Boat.

102.   The foreseeable risks associated with the dangerous manufacture of the Boat exceeded the benefits associated with the design of the Boat.

103.   As the manufacturer and/or seller of a consumer product, Defendant Skier's Choice owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide a product that would perform as intended and expected.  Defendant owed a duty to disclose the defects that it knew or should have known existed yet failed to do so to the detriment of Plaintiff's Insured.

104.   Defendant Skier's Choice breached its duties in one or more of the following ways:

a.   Defendant knew or should have known that the Boat was manufactured without concern for safety and performance;

b.   Defendant knew or should have known that the Boat was manufactured without concern for an unreasonable risk of harm;

c.   Defendant knew or should have known that the Boat was manufactured without concern that it endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.   Defendant failed to properly test and inspect the Boat and its component parts before they left the Defendant's control;

e.      Defendant knew or should have known that the Boat and its component parts were manufactured without concern for appropriate material and component selection;

f.      Defendant knew or should have known that the Boat was manufactured without concern for maximum functionality;

g.      Defendant knew or should have known that the Boat was manufactured without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant knew or should have known that the Boat was manufactured without proper concern for the type of wiring connectors and harnesses to be utilized in the Boat's electrical system;

i.      Defendant knew or should have known that the boat was manufactured with a defective alternator;

j.      Defendant knew or should have known that the Boat was manufactured without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

k.      Defendant negligently manufactured the Boat in other ways under the circumstances to be determined.

105.    As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Skier's Choice is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property,

extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

106.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT VI - NEGLIGENCE
## FAILURE TO WARN/ INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
## (SKIER'S CHOICE, INC.)

107.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

108.   Defendant Skier's Choice developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the 2020 Supra SL Boat.

109.   The Boat that the Defendant developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold was defective in its design and manufacture and it was defective and unreasonably dangerous when it left the Defendant's control.

110.   Plaintiff's Insured was a member of the class of persons that Defendant Skier's Choice should have reasonably foreseen as being subject to the harm caused by the Boat's defective and unreasonably dangerous condition.

111.   Defendant knew, or should have known, that the Boat contained a non-obvious danger and that consumers and/or servicers of the Boat would not comprehend the danger without an adequate warning.

112.    Defendant knew, or should have known, that the Boat and its component parts, including, but not limited to, its alternator, the alternator's voltage regulator and the connector that attached the alternator to the engine wiring harness, were defective and susceptible to failure under expected conditions and that consumers and servicers of the Boat could not appreciate the risk caused by the defect nor could they adequately identify and remediate the potential defect because of inadequate instructions, warnings and service bulletins provided by the Defendant.

113.    Defendant failed to inform Plaintiff's Insured as to the Boat's susceptibility for sudden catastrophic failure and fire.

114.    Defendant failed to warn consumers and servicers of the Boat that the identified defects in the alternator, the alternator's voltage regulator and the wiring connector that attached the alternator to the engine wiring harness could cause electrical malfunctions and/or failures that could result in a fire.

115.    The Boat was defective due to inadequate warnings and inadequate inspection and testing and inadequate reporting regarding the results of quality control testing and safety inspections or lack thereof.

116.    Had Plaintiff's Insured been adequately warned/instructed concerning the likelihood that, and the manner in which, the Boat could suffer a catastrophic electrical failure and fire, they would have taken steps to avoid the fire that occurred.

117.    Defendant Skier's Choice, upon learning that its Boat could suffer catastrophic failures and fires had a post-sale duty to warn consumers and servicers of the possibility that catastrophic failure and fire could result even when the Boat was used for its intended purpose.

118.    The Boat was distributed and sold with no warnings or, if any, with inadequate warnings for the danger presented.

119.    A product is defective because of inadequate instruction or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor or, a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

120.    A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed.  A warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated.  An adequate warning not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings may also be inadequate based on their form, manner of expression or lack of exigency.

121.    The Boat was defective because Defendant Skier's Choice failed to give reasonable warnings of the danger posed by the defects in the Boat; and/or failed to give reasonably complete instructions on the proper use of the Boat; and/or failed to provide reasonable warnings regarding the likelihood that the defects in the Boat could start a fire; and/or failed to provide complete and understandable instructions regarding the manner in which any identified defects in the Boat should be remediated when Defendant, by exercising reasonable diligence, could have made such warnings and/or instructions available to Plaintiff's Insured.

122.    As the manufacturer and/or seller of a consumer product, Defendant owed a duty to Plaintiff's Insured to provide adequate warnings and/or instructions.

123.   Defendant breached these duties because its Boat provided no warning/instruction or the warning/instruction was inadequate in the following ways:

a.   Defendant knew or should have known Defendant's Boat provided no warning of the defects contained in the Boat;

b.   Defendant knew or should have known its warnings, if any, were inadequate because they failed to disclose all inherent risks;

c.   Defendant knew or should have known its warnings, if any, were inadequate because they failed to convey a fair indication of the nature of the dangers involved;

d.   Defendant knew or should have known its warnings, if any, were inadequate because they failed to warn with a degree of intensity demanded by the nature of the risk;

e.   Defendant knew or should have known its warnings, if any, were inadequate because they failed to communicate sufficient information as to the inherent dangers;

f.   Defendant knew or should have known its warnings, if any, were inadequate because they failed to warn of dangers that arise during known or reasonably foreseeable uses of the product;

g.   Defendant knew or should have known its warnings, instructions, service bulletins and/or recalls failed to warn of the specific risks posed by the defects in the Boat including, but not limited to, catastrophic electrical failures and fires;

h.      Defendant knew or should have known its warnings, instructions, service bulletins and/or recalls failed to provide reasonable and understandable instructions regarding the correct manner in which any defects in the Boat could be identified and remediated; and

i.      Defendant knew or should have known its warnings, instructions, service bulletins and/or recalls were inadequate in other ways, under the circumstances, to be determined.

124.    As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Skier's Choice is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

125.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT VII - BREACH OF WARRANTY
## (SKIER'S CHOICE, INC.)

126.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

127.    Defendant Skier's Choice is a merchant with regard to the Boat.

128.    Defendant Skier's Choice's boats are goods.

129.    Defendant Skier's Choice's implied warranty of merchantability accompanied the sale of the Boat.

130.    Defendant Skier's Choice warranted that the Boat was fit for ordinary use.

131.    The materials, design, and manufacture of the Boat made it defective and unfit for the ordinary purposes for which it is typically used.  The Boat is not fit for ordinary use.

132.    Any effort by the Defendant to disclaim or limit its responsibility for its defective Boat would be unconscionable under the circumstances because Defendant knew, or should have known, its Boat was unfit for normal use.  Through its conduct, Defendant breached its implied warranty of merchantability and is liable to Plaintiff's Insured.

133.    Defendant breached its warranties in one or more of the following ways:

     a.     Failing to manufacture and/or design the Boat in a safe manner;

     b.     Selling and/or distributing a defective Boat that subjected Plaintiff's Insured and its property to unreasonable risks of harm;

     c.     Failing to design, manufacture and test the Boat to ensure it was safe for its intended uses;

     d.     Failing to act as a reasonably prudent company would have under the same or similar circumstances; and

     e.     Breaching its warranties in other ways to be determined through discovery.

134.    As a direct and proximate result of the Defendant's aforesaid breach of warranty, for which Defendant Skier's Choice is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra

expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

135.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Skier's Choice to the extent of such payments.

## COUNT VIII – STRICT LIABILITY
## DESIGN DEFECT
## (INDMAR PRODUCTS CO., INC.)

136.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

137.    Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the engine and its associated components which were installed in the Boat.

138.    The engine and its associated components that Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective in their design and were defective and unreasonably dangerous when they left the control of Indmar.

139.    Plaintiff's Insured was a member of the class of persons that Defendant Indmar should have reasonably foreseen as being subject to the harm caused by the defective and unreasonably dangerous condition of the engine and its associated components installed in the Boat.

140.    Defendant Indmar knew, or should have known, that the engine and its associated components contained non-obvious dangers in their design.

141.    The foreseeable risks associated with the dangerous design of the Defendant's engine and its associated components exceeded the benefits associated with their design.

142.    Defendant Indmar's engine and its associated components were defectively designed in one or more of the following ways:

        a.    Defendant designed the engine and its associated components without concern for safety and performance;

        b.    Defendant designed the engine and its associated components without concern for an unreasonable risk of harm;

        c.    Defendant designed the engine and its associated components without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

        d.    Defendant failed to properly test and inspect the engine and its associated components during the design stage prior to production;

        e.    Defendant designed the engine and its associated components without concern for appropriate material and component selection;

        f.    Defendant designed the engine and its associated components without concern for maximum functionality;

        g.    Defendant designed the engine and its component parts without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.     Defendant designed the engine and its associated components without proper concern for the type of wiring connectors and harnesses to be utilized in the electrical connections for the engine;

i.     Defendant designed the engine and its associated components without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

j.     Defendant defectively designed the engine and its associated components in other ways under the circumstances to be determined.

143.   As a direct and proximate result of the defective and unreasonably dangerous condition of the engine and its associated components and Defendant Indmar's aforesaid acts and/or omissions, for which the Defendant is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

144.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

**COUNT IX – STRICT LIABILITY
MANUFACTURING DEFECT
(INDMAR PRODUCTS CO., INC.)**

145.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

146.   Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted

and/or sold the marine engine and its associated components that were installed in the Boat.

147.   The engine and its associated components that Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective and unreasonably dangerous when they left the Defendant's control.

148.   At the time the engine and its associated components were sold, they were in the same defective and unreasonably dangerous condition as when they left the Defendant's possession and control.

149.   Plaintiff's Insured was a member of the class of persons that Defendant Indmar should have reasonably foreseen as being subject to the harm caused by the engine and its associated components' defective and unreasonably dangerous condition.

150.   Defendant Indmar knew, or should have known, that the engine and its associated components contained non-obvious dangers in the way in which they were manufactured and assembled.

151.   The foreseeable risks associated with the dangerous manner in which the engine and its associated components were manufactured exceeded the benefits associated with the engine and its associated components.

152.   Defendant's engine and associated components were defectively manufactured in one or more of the following ways:

    a.   Defendant manufactured the engine and its associated components without concern for safety and performance;

b.      Defendant manufactured the engine and its associated components without concern for an unreasonable risk of harm;

c.      Defendant manufactured the engine and its associated components without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.      Defendant failed to properly test and inspect the engine and its associated components before they left the Defendant's control;

e.      Defendant manufactured the engine and its associated components without concern for appropriate material and component selection;

f.      Defendant manufactured the engine and its associated components without concern for maximum functionality;

g.      Defendant manufactured the engine and its associated components without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant manufactured the engine and its associated components without proper concern for the type of wiring connectors and harnesses to be utilized in the electrical connections to the engine;

i.      Defendant manufactured the engine and its associated components without concern for or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements;

j.      Defendant manufactured the engine and its associated components, and supplied repair facilities such as the one operated by Plaintiff's Insured, with incorrectly assembled wiring connectors and harnesses;

k.      Defendant manufactured the engine and its associated components with a defective alternator; and

l.      Defendant defectively manufactured the engine and its associated components in other ways under the circumstances to be determined.

153.    As a direct and proximate result of the defective and unreasonably dangerous condition of the engine and its associated components and Defendant Indmar's aforesaid acts and/or omissions, for which the Defendant is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

154.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

## COUNT X - STRICT LIABILITY
## FAILURE TO WARN/ INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
## (INDMAR PRODUCTS CO., INC.)

155.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

156.    Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the engine and associated components installed in the Boat.

157.    The engine and its associated components that the Defendant developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective in their design and

manufacture and they were defective and unreasonably dangerous when they left the Defendant's control.

158.    At the time the engine and associated components were sold, they were in the same defective and unreasonably dangerous condition in which they left the Defendant's possession and control.

159.    Plaintiff's Insured was a member of the class of persons that Defendant Indmar should have reasonably foreseen as being subject to the harm caused by the engine and its associated components' defective and unreasonably dangerous condition.

160.    Defendant knew, or should have known, that the engine and its associated components contained a non-obvious danger and that purchasers and/or servicers of the engine and its associated components would not comprehend the danger without an adequate warning.

161.    Defendant knew, or should have known, that the engine and its associated components, including, but not limited to, the alternator, the alternator's voltage regulator and the connector that attached the alternator to the engine wiring harness, were defective and susceptible to failure under expected conditions and that purchasers and servicers of the engine and its associated components could not appreciate the risk caused by the defects nor could they adequately identify and remediate the potential defects because of inadequate instructions, warnings and service bulletins provided by the Defendant.

162.    Defendant failed to inform Plaintiff's Insured as to the engine and its associated components' susceptibility for sudden catastrophic failure and fire.

163.   Defendant failed to warn purchasers and servicers of the engine and its associated components that the identified defects in the alternator, the alternator's voltage regulator and/or the wiring connector that attached the alternator to the engine wiring harness could cause electrical malfunctions and/or failures that could result in a fire.

164.   The engine and its associated components were defective due to inadequate warnings, inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing and safety inspections or lack thereof.

165.   Had Plaintiff's Insured been adequately warned/instructed concerning the likelihood that, and the manner in which, the engine and its associated components could suffer a catastrophic electrical failure and fire, they would have taken steps to avoid the fire that occurred.

166.   Defendant Indmar, upon learning that its engine and associated components could suffer catastrophic failures and fires, had a post-sale duty to warn consumers and servicers of the possibility that catastrophic failures and fire could result from the engine and its associated components even when used for their intended purpose.

167.   The engine and its associated components were distributed with no warnings or, if any, with inadequate warnings for the danger presented.

168.   A product is defective because of inadequate instruction or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor

or, a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

169.   A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed.   A warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated.   An adequate warning not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.   Warnings may also be inadequate based on their form, manner of expression or lack of exigency.

170.   The engine and its associated components were defective because Defendant Indmar failed to give reasonable warnings of the danger posed by the defects in the engine and its associated components; and/or failed to give reasonably complete instructions on the proper use of the engine and its associated components; and/or failed to provide reasonable warnings regarding the likelihood that the defects in the engine and its associated components could start a fire; and/or failed to provide complete and understandable instructions regarding the manner in which any identified defects in the engine and associated components should be remediated when Defendant, by exercising reasonable diligence, could have made such warnings and/or instructions available to Plaintiff's Insured.

171.   Defendant Indmar's engine and its associated components provided no warning or the warning was inadequate or provided inadequate instruction in one or more of the following ways:

a.      Defendant's engine and its associated components provided no warning of their defects:

b.      Defendant's warnings, if any, were inadequate because they failed to disclose all inherent risks;

c.      Defendant's warnings, if any, were inadequate because they failed to convey a fair indication of the nature of the dangers involved;

d.      Defendant's warnings, if any, were inadequate because they failed to warn with a degree of intensity demanded by the nature of the risk;

e.      Defendant's warnings, if any, were inadequate because they failed to communicate sufficient information as to the inherent dangers;

f.      Defendant's warnings, if any, were inadequate because they failed to warn of dangers that arise during known or reasonably foreseeable uses of the engine and its component parts;

g.      Defendant's warnings, instructions, service bulletins and/or recalls failed to warn of the specific risks posed by the defects in the engine and its associated components including, but not limited to, the risk of catastrophic electrical failures and fires;

h.      Defendant's warnings, instructions, service bulletins and/or recalls failed to provide reasonable and understandable instructions regarding the correct manner in which any defects in the engine and its associated components could be identified and remediated; and

i.      Defendant's warnings, instructions, service bulletins and/or recalls were inadequate in other ways, under the circumstances, to be determined.

172.   As a direct and proximate result of the defective and unreasonably dangerous condition of the engine and its associated components and the inadequate

warnings and instructions provided with regard to the engine and its associated components, and Defendant's aforesaid acts and/or omissions, for which Defendant Indmar is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

173.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

## COUNT XI – NEGLIGENCE
## NEGLIGENT DESIGN
## (INDMAR PRODUCTS CO., INC.)

174.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if set forth fully herein at length.

175.   Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold a defective engine and its associated components which were installed in the Boat which was brought to Plaintiff's Insured's business for repair and maintenance.

176.   At the time the engine and its associated components were sold, they were in the same dangerous and defective condition as when they left the Defendant's possession and control.

177.   Plaintiff's Insured was a member of the class of persons that Defendant Indmar should have reasonably foreseen as being subject to the harm caused by the engine and its associated components' defective and unreasonably defective condition.

178.   Defendant Indmar was negligent in that it failed to use reasonable care when it developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the engine and its associated components.

179.   The foreseeable risk associated with the dangerous design and manufacture of the engine and its associated components exceeded the benefits associated with the design of the engine and its associated components.

180.   As the manufacturer and/or seller of a consumer product, Defendant Indmar owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide products that would perform as intended and expected.   Defendant owed a duty to disclose the defects that it knew or should have known existed yet failed to do so to the detriment of Plaintiff's Insured.

181.   Defendant Indmar breached its duties in one or more of the following ways:

a.      Defendant knew or should have known that the engine and its associated components were designed without concern for safety and performance;

b.      Defendant knew or should have known that the engine and its associated components were designed without concern for an unreasonable risk of harm;

c.      Defendant knew or should have known that the engine and its associated components were designed without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.   Defendant failed to properly test and inspect the engine and its associated components during the design stage prior to production;

e.   Defendant knew or should have known that the engine and its associated components were designed without concern for appropriate material and component selection;

f.   Defendant knew or should have known that the engine and its component parts were designed without concern for maximum functionality;

g.   Defendant knew or should have known that the engine and its component parts were designed without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.   Defendant knew or should have known that the engine and its associated components were designed without proper concern for the type of wiring connectors and harnesses to be utilized in the electrical connections to the engine;

i.   Defendant knew or should have known that the engine and its associated components were designed without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

j.   Defendant negligently designed the engine and its associated components in other ways under the circumstances to be determined.

182.   As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Indmar is liable, Plaintiff's Insured suffered

damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

183.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

## COUNT XII – NEGLIGENCE
## NEGLIGENT MANUFACTURE
## (INDMAR PRODUCTS CO., INC.)

184.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

185.   Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold a defective engine and its associated components which were installed in the Boat that was brought to Plaintiff's Insured's business for repair and maintenance.

186.   At the time the engine and its associated components were sold, they were in the same dangerous and defective condition as when they left the Defendant's possession and control.

187.   Plaintiff's Insured was a member of the class of persons that Defendant Indmar should have reasonably foreseen as being subject to the harm caused by the engine and its associated components' defective and unreasonably defective condition.

188.   Defendant Indmar was negligent in that it failed to use reasonable care when it developed, designed, engineered, manufactured, distributed, marketed,

packaged, labeled, constructed, tested, inspected, warranted and/or sold the engine and its associated components.

189.   The foreseeable risk associated with the dangerous manufacture of the engine and its associated components exceeded the benefits associated with the design of the engine and its associated components.

190.   As the manufacturer and/or seller of a consumer product, Defendant Indmar owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide a product that would perform as intended and expected.   Defendant owed a duty to disclose the defects that it knew or should have known existed yet failed to do so to the detriment of Plaintiff's Insured.

191.   Defendant Indmar breached its duties in one or more of the following ways:

a.   Defendant knew or should have known that the engine and its associated components were manufactured without concern for an unreasonable risk of harm;

b.   Defendant knew or should have known that the engine and its associated components were manufactured without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

c.   Defendant failed to properly test and inspect the engine and its associated components before they left the Defendant's control;

d.   Defendant knew or should have known that the engine and its associated components were manufactured without concern for appropriate material and component selection;

e.      Defendant knew or should have known that the engine and its associated components were manufactured without concern for maximum functionality;

f.      Defendant knew or should have known that the engine and its associated components were manufactured without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

g.      Defendant knew or should have known that the engine and its associated components were manufactured without proper concern for the type of wiring connectors and harnesses to be utilized in the engine's electrical connections;

h.      Defendant knew or should have known that the engine was manufactured with a defective alternator;

i.      Defendant negligently manufactured the engine and its associated components, and supplied repair facilities such as the one operated by Plaintiff's Insured, with incorrectly assembled wiring connectors and harnesses;

j.      Defendant knew or should have known that the engine and its associated components were manufactured without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

k.      Defendant negligently manufactured the engine and its associated components in other ways under the circumstances to be determined.

192.   As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Indmar is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

193.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

## COUNT XIII - NEGLIGENCE
## FAILURE TO WARN/ INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
## (INDMAR PRODUCTS CO., INC.)

194.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

195.   Defendant Indmar developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the engine and its associated components that were installed in the Boat.

196.   The engine and its associated components that the Defendant developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective in their design and manufacture and were defective and unreasonably dangerous when they left the Defendant's control.

197.   Plaintiff's Insured was a member of the class of persons that Defendant Indmar should have reasonably foreseen as being subject to the harm caused by the engine and its associated components' defective and unreasonably dangerous condition.

198.   Defendant knew, or should have known, that the engine and its associated components contained non-obvious dangers and that purchasers and/or servicers of the engine and its associated components would not comprehend the danger without an adequate warning.

199.   Defendant knew, or should have known, that the engine and its associated components, including, but not limited to, its alternator, the alternator's voltage regulator and the connector that attached the alternator to the engine wiring harness, were defective and susceptible to failure under expected conditions and that purchasers and servicers of the engine and its associated components could not appreciate the risk caused by the defects nor could they adequately identify and remediate the potential defects because of inadequate instructions, warnings and service bulletins provided by the Defendant.

200.   Defendant failed to inform Plaintiff's Insured as to the engine and its associated components' susceptibility for sudden, catastrophic failures and fire.

201.   Defendant failed to warn purchasers and servicers of the engine and its associated components that the identified defects in the alternator, the alternator's voltage regulator and the wiring connector that attached the alternator to the engine wiring harness, could cause electrical malfunctions and/or failures that could result in a fire.

202.   The engine and its associated components were defective due to inadequate warnings and inadequate inspection and testing and inadequate reporting regarding the results of quality control testing and safety inspections or lack thereof.

203.   Had Plaintiff's Insured been adequately warned/instructed concerning the likelihood that, and the manner in which, the engine and its associated components could

suffer a catastrophic electrical failure and fire, they would have taken steps to avoid the fire that occurred.

204.   Defendant Indmar, upon learning that its engine and its associated components could suffer catastrophic failures and fires, had a post-sale duty to warn consumers and servicers of the possibility that catastrophic failure and fire could result from the engine and its associated components even when used for their intended purpose.

205.   The engine and its associated components were distributed with no warnings or, if any, with inadequate warnings for the danger presented.

206.   A product is defective because of inadequate instruction or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor or, a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

207.   A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed.  A warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated.  An adequate warning not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings may also be inadequate based on their form, manner of expression or lack of exigency.

208.   The engine and its associated components were defective because Defendant Indmar failed to give reasonable warnings of the danger posed by the defects in the engine and its associated components; and/or failed to give reasonably complete

instructions on the proper use of the engine and its associated components; and/or failed to provide reasonable warnings regarding the likelihood that the defects in the engine and its associated components could start a fire; and/or failed to provide complete and understandable instructions regarding the manner in which any identified defects in the engine and its associated components should be remediated when Defendant, by exercising reasonable diligence, could have made such warnings and/or instructions available to Plaintiff's Insured.

209.    As the manufacturer and/or seller of a consumer product, Defendant owed a duty to Plaintiff's Insured to provide adequate warnings and/or instructions.

210.    Defendant breached its duties because its engine and associated components provided no warning/instruction or the warning/instruction was inadequate in the following ways:

a.    Defendant knew or should have known that it provided no warning of the defects contained in the engine and the engine's associated components;

b.    Defendant knew or should have known its warnings, if any, were inadequate because they failed to disclose all inherent risks;

c.    Defendant knew or should have known its warnings, if any, were inadequate because they failed to convey a fair indication of the nature of the dangers involved;

d.    Defendant knew or should have known its warnings, if any, were inadequate because they failed to warn with a degree of intensity demanded by the nature of the risk;

e.      Defendant knew or should have known its warnings, if any, were inadequate because they failed to communicate sufficient information as to the inherent dangers;

f.      Defendant knew or should have known its warnings, if any, were inadequate because they failed to warn of dangers that arise during known or reasonably foreseeable uses of the product;

g.      Defendant knew or should have known its warnings, instructions, service bulletins and/or recalls failed to warn of the specific risks posed by the defects in the engine and the engine's associated components including, but not limited to, catastrophic electrical failures and fires;

h.      Defendant knew or should have known its warnings, instructions, service bulletins and/or recalls failed to provide reasonable and understandable instructions regarding the correct manner in which any defects in the engine and associated components could be identified and remediated; and

i.      Defendant knew or should have known its warnings, instructions, service bulletins and/or recalls were inadequate in other ways, under the circumstances, to be determined.

211.   As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Indmar is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

212.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

## COUNT XIV - BREACH OF WARRANTY
### (INDMAR PRODUCTS CO., INC.)

213.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

214.    Defendant Indmar is a merchant with regard to the engine and its associated components.

215.    Defendant Indmar's engine and its associated components are goods.

216.    Defendant Indmar's implied warranty of merchantability accompanied the sale of the engine and its associated components.

217.    Defendant Indmar warranted that the engine and its associated components were fit for ordinary use.

218.    The materials, design, and manufacture of the engine and its associated components made it defective and unfit for the ordinary purposes for which they are typically used.  The engine and its associated components were not fit for ordinary use.

219.    Any effort by the Defendant to disclaim or limit its responsibility for its defective engine and associated components would be unconscionable under the circumstances because Defendant knew, or should have known, its engine and associated components were unfit for normal use.  Through its conduct, Defendant breached its implied warranty of merchantability and is liable to Plaintiff's Insured.

220.    Defendant breached its warranties in one or more of the following ways:

    a.     Failing to manufacture and/or design the engine and its associated components in a safe manner;

    b.     Selling and/or distributing a defective engine and its associated components that subjected Plaintiff's Insured and its property to unreasonable risks of harm;

    c.     Failing to design, manufacture and test its engine and associated components to ensure they were safe for their intended uses;

    d.     Failing to act as a reasonably prudent company would have under the same or similar circumstances; and

    e.     Breaching its warranties in other ways to be determined through discovery.

221.   As a direct and proximate result of the Defendant's aforesaid breach of warranty for which Defendant Indmar is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

222.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Indmar to the extent of such payments.

## COUNT XV – STRICT LIABILITY
## DESIGN DEFECT
## (ARROWHEAD ENGINEERED PRODUCTS, INC.)

223.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

224.   Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the alternator and its associated components that were installed in the Boat.

225.   The alternator and its associated components that Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective in their design and were defective and unreasonably dangerous when they left the control of Arrowhead.

226.   Plaintiff's Insured was a member of the class of persons that Defendant Arrowhead should have reasonably foreseen as being subject to the harm caused by the defective and unreasonably dangerous condition of the alternator and its associated components installed in the Boat.

227.   Defendant Arrowhead knew, or should have known, that the alternator and its associated components contained non-obvious dangers in their design.

228.   The foreseeable risks associated with the dangerous design of the Defendant's alternator and its associated components exceeded the benefits associated with their design.

229.   Defendant Arrowhead's alternator and its associated components were defectively designed in one or more of the following ways:

   a.   Defendant designed the alternator and its associated components without concern for safety and performance;

   b.   Defendant designed the alternator and its associated components without concern for an unreasonable risk of harm;

c.      Defendant designed the alternator and its associated components without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.      Defendant failed to properly test and inspect the alternator and its associated components during the design stage prior to production;

e.      Defendant designed the alternator and its associated components without concern for appropriate material and component selection;

f.      Defendant designed the alternator and its associated components without concern for maximum functionality;

g.      Defendant designed the alternator and its component parts without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant designed the alternator and its component parts without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

i.      Defendant defectively designed the alternator and its component parts in other ways under the circumstances to be determined.

230.    As a direct and proximate result of the defective and unreasonably dangerous condition of the alternator and its component parts and Defendant Arrowhead's aforesaid acts and/or omissions, for which the Defendant is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

231.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

## COUNT XVI – STRICT LIABILITY
## MANUFACTURING DEFECT
## (ARROWHEAD ENGINEERED PRODUCTS, INC.)

232.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

233.   Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the alternator and its associated components that were installed in the Boat.

234.   The alternator and its associated components that Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective and unreasonably dangerous when they left the Defendant's control.

235.   At the time the alternator and its associated components were sold, they were in the same defective and unreasonably dangerous condition in which they left the Defendant's possession and control.

236.   Plaintiff's Insured was a member of the class of persons that Defendant Arrowhead should have reasonably foreseen as being subject to the harm caused by the alternator and its associated components' defective and unreasonably dangerous condition.

237.   Defendant Arrowhead knew, or should have known, that the alternator and its associated components contained non-obvious dangers in the way in which they were manufactured and constructed.

238.   The foreseeable risks associated with the dangerous manner in which the alternator and its associated components were manufactured exceeded the benefits associated with the alternator and its associated components.

239.   Defendant's alternator and its associated components were defectively manufactured in one or more of the following ways:

a.   Defendant manufactured the alternator and its associated components without concern for safety and performance;

b.   Defendant manufactured the alternator and its associated components without concern for an unreasonable risk of harm;

c.   Defendant manufactured the alternator and its associated components without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.   Defendant failed to properly test and inspect the alternator and its associated components before they left the Defendant's control;

e.   Defendant manufactured the alternator and its associated components without concern for appropriate material and component selection;

f.   Defendant manufactured the alternator and its associated components without concern for maximum functionality;

g.      Defendant manufactured the alternator and it associated components without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant manufactured the alternator and its associated components without proper concern for the type of circuit boards, wiring connectors and harnesses to be utilized in the alternator and its associated components;

i.      Defendant manufactured the alternator and its associated components without concern for or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

j.      Defendant defectively manufactured the alternator and its associated components in other ways under the circumstances to be determined.

240.    As a direct and proximate result of the defective and unreasonably dangerous condition of the alternator and its associated components and Defendant Arrowhead's aforesaid acts and/or omissions, for which the Defendant is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

241.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

## COUNT XVII - STRICT LIABILITY
## FAILURE TO WARN/ INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
## (ARROWHEAD ENGINEERED PRODUCTS, INC.)

242.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

243.    Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the alternator and its associated components that were installed in the Boat.

244.    The alternator and its associated components that the Defendant developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective in their design and manufacture and were  defective and unreasonably dangerous when they left the Defendant's control.

245.    At the time the alternator and associated components were sold, they were in the same defective and unreasonably dangerous condition in which they left the Defendant's possession and control.

246.    Plaintiff's Insured was a member of the class of persons that Defendant Arrowhead should have reasonably foreseen as being subject to the harm caused by the alternator and its associated components' defective and unreasonably dangerous condition.

247.    Defendant knew, or should have known, that the alternator and its associated components contained non-obvious dangers and that purchasers and/or servicers of the alternator and its associated components would not comprehend the danger without an adequate warning.

248.   Defendant knew, or should have known, that the alternator and its associated components, including, but not limited to, the alternator's voltage regulator and the connector that attached the alternator to the engine wiring harness, were defective and susceptible to failure under expected conditions and that consumers and servicers of the alternator and associated components could not appreciate the risk caused by the defect nor could they adequately identify and remediate the potential defect because of inadequate instructions, warnings and service bulletins provided by the Defendant.

249.   Defendant failed to inform Plaintiff's Insured as to the alternator and its associated components' susceptibility for sudden catastrophic failure and fire.

250.   Defendant failed to warn purchasers and servicers of the alternator and its associated components that the identified defects in the alternator, the alternator's voltage regulator and the wiring connector that attached the alternator to the engine wiring harness could cause electrical malfunctions and/or failures that could result in a fire.

251.   The alternator and its associated components were defective due to inadequate warnings and inadequate inspection and testing and inadequate reporting regarding the results of quality control testing and safety inspections or lack thereof.

252.   Had Plaintiff's Insured been adequately warned/instructed concerning the likelihood that, and the manner in which, the alternator and its associated components could suffer catastrophic electrical failures and fire, they would have taken steps to avoid the fire that occurred.

253.   Defendant Arrowhead, upon learning that its alternator and associated components could suffer catastrophic failures and fires, had a post-sale duty to warn

consumers and servicers of the possibility that catastrophic failure and fire could result from the alternator and its associated components even when used for their intended purposes.

254.   The alternator and its associated components were distributed with no warnings or, if any, with inadequate warnings for the danger presented.

255.   A product is defective because of inadequate instruction or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

256.   A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed.  A warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated.  An adequate warning not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings may also be inadequate based on their form, manner of expression or lack of exigency.

257.   The alternator and its associated components were defective because Defendant Arrowhead failed to give reasonable warnings of the danger posed by the defects in the alternator and its associated components; and/or failed to give reasonably complete instructions on the proper use of the alternator and its associated components; and/or failed to provide reasonable warnings regarding the likelihood that the defects in the alternator and its associated components could start a fire; and/or failed to provide complete and understandable instructions regarding the manner in which any identified

defects in the alternator and its associated components should be remediated when Defendant, by exercising reasonable diligence, could have made such warnings and/or instructions available to Plaintiff's Insured.

258.   Defendant Arrowhead's alternator and its associated components provided no warning or the warning was inadequate or provided inadequate instruction in one or more of the following ways:

a.   Defendant's alternator and its associated components provided no warning of their defects;

b.   Defendant's warnings, if any, were inadequate because they failed to disclose all inherent risks;

c.   Defendant's warnings, if any, were inadequate because they failed to convey a fair indication of the nature of the dangers involved;

d.   Defendant's warnings, if any, were inadequate because they failed to warn with a degree of intensity demanded by the nature of the risk;

e.   Defendant's warnings, if any, were inadequate because they failed to communicate sufficient information as to the inherent dangers;

f.   Defendant's warnings, if any, were inadequate because they failed to warn of dangers that would arise during known or reasonably foreseeable uses of the product;

g.   Defendant's warnings, instructions, service bulletins and/or recalls failed to warn of the specific risks posed by the defects in the alternator and its associated components including, but not limited to, catastrophic electrical failures and fires;

h.      Defendant's warnings, instructions, service bulletins and/or recalls failed to provide reasonable and understandable instructions regarding the correct manner in which any defects in the alternator and associated components could be identified and remediated; and

i.      Defendant's warnings, instructions, service bulletins and/or recalls were inadequate in other ways, under the circumstances, to be determined.

259.   As a direct and proximate result of the defective and unreasonably dangerous condition of the alternator and its associated components and the inadequate warnings and instructions provided with regard to the alternator and its associated components, and Defendant's aforesaid acts and/or omissions, for which Defendant Arrowhead is strictly liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

260.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

### COUNT XVIII – NEGLIGENCE
### NEGLIGENT DESIGN
### (ARROWHEAD ENGINEERED PRODUCTS, INC.)

261.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

262.   Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted

and/or sold a defective alternator and its associated components which were installed in the Boat which was brought to Plaintiff's Insured's business for repair and maintenance.

263.   At the time the alternator and its associated components were sold they were in the same dangerous and defective condition as when they left the Defendant's possession and control.

264.   Plaintiff's Insured was a member of the class of persons that Defendant Arrowhead should have reasonably foreseen as being subject to the harm caused by the alternator and its associated components' defective and unreasonably defective condition.

265.   Defendant Arrowhead was negligent in that it failed to use reasonable care when it developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the alternator and its associated components.

266.   The foreseeable risk associated with the dangerous design and manufacture of the alternator and its associated components exceeded the benefits associated with the design of the alternator and its associated components.

267.   As the manufacturer and/or seller of a consumer product, Defendant Arrowhead owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide products that would perform as intended and expected.  Defendant owed a duty to disclose the defects that it knew or should have known existed yet failed to do so to the detriment of Plaintiff's Insured.

268.   Defendant, Arrowhead breached its duties in one or more of the following ways:

a.      Defendant knew or should have known that the alternator and its associated components were designed without concern for safety and performance;

b.      Defendant knew or should have known that the alternator and its associated components were designed without concern for an unreasonable risk of harm;

c.      Defendant knew or should have known that the alternator and its associated components were designed without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

d.      Defendant failed to properly test and inspect the alternator and its associated components during the design stage prior to production;

e.      Defendant knew or should have known that the alternator and its associated components were designed without concern for appropriate material and component selection;

f.      Defendant knew or should have known that the alternator and its component parts were designed without concern for maximum functionality;

g.      Defendant knew or should have known that the alternator and its component parts were designed without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

h.      Defendant knew or should have known that the alternator and its associated components were designed without proper concern for the type of wiring connectors and harnesses to be connected to them;

       i.      Defendant knew or should have known that the alternator and its associated components were designed without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

       j.      Defendant negligently designed the alternator and its associated components in other ways under the circumstances to be determined.

269.   As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Arrowhead is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

270.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

## COUNT XIX – NEGLIGENCE
## NEGLIGENT MANUFACTURE
## (ARROWHEAD ENGINEERED PRODUCTS, INC.)

271.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

272.   Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold a defective alternator and its associated components which were installed in the Boat which was brought to Plaintiff's Insured's business for repair and maintenance.

273.   At the time the alternator and its associated components were sold, they were in the same dangerous and defective condition as when they left the Defendant's possession and control.

274.   Plaintiff's Insured was a member of the class of persons that Defendant Arrowhead should have reasonably foreseen as being subject to the harm caused by the alternator and its associated components' defective and unreasonably defective condition.

275.   Defendant Arrowhead was negligent in that it failed to use reasonable care when it developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold the alternator and its associated components.

276.   The foreseeable risk associated with the dangerous manufacture of the alternator and its associated components exceeded the benefits associated with the design of the alternator and its associated components.

277.   As the manufacturer and/or seller of a consumer product, Defendant Arrowhead owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide products that would perform as intended and expected.  Defendant owed a duty to disclose the defects that it knew or should have known existed yet failed to do so to the detriment of Plaintiff's Insured.

278.   Defendant Arrowhead breached its duties in one or more of the following ways:

a.     Defendant knew or should have known that the alternator and its associated components were manufactured without concern for an unreasonable risk of harm;

b.     Defendant knew or should have known that the alternator and its associated components were manufactured without concern that they endangered the real and business property of Plaintiff's Insured as well as the property of others;

c.     Defendant failed to properly test and inspect the alternator and its associated components before they left the Defendant's control;

d.     Defendant knew or should have known that the alternator and its associated components were manufactured without concern for appropriate material and component selection;

e.     Defendant knew or should have known that the alternator and its associated components were manufactured without concern for maximum functionality;

f.     Defendant knew or should have known that the alternator and its associated components were manufactured without concern for the potential of failures in the alternator's voltage regulator under the conditions in which the alternator was expected to be utilized;

g.     Defendant knew or should have known that the alternator and its associated components were manufactured without proper concern for the type of wiring connectors and harnesses to be utilized in the connections to the alternator;

h.     Defendant knew or should have known that the alternator was manufactured with a defective voltage regulator;

i.     Defendant knew or should have known that the alternator and its associated components were manufactured without concern for, or without compliance with, all local, state and federal, codes, regulations, ordinances, standards, recommendations and/or requirements; and

j.     Defendant negligently manufactured the alternator and its associated components in other ways under the circumstances to be determined.

279.   As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Arrowhead is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

280.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

## COUNT XX - NEGLIGENCE
## FAILURE TO WARN/ INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
## (ARROWHEAD ENGINEERED PRODUCTS, INC.)

281.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

282.   Defendant Arrowhead developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted

and/or sold the alternator and its associated components that were installed in the Boat which was brought to Plaintiff's Insured's business for repair and maintenance.

283.   The alternator and its associated components that the Defendant developed, designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted and/or sold were defective in their design and manufacture and were defective and unreasonably dangerous when they left the Defendant's control.

284.   Plaintiff's Insured was a member of the class of persons that Defendant Arrowhead should have reasonably foreseen as being subject to the harm caused by the alternator and its associated components' defective and unreasonably dangerous condition.

285.   Defendant knew, or should have known, that the alternator and its associated components contained a non-obvious danger and that consumers and/or servicers of the alternator and its associated components would not comprehend the danger without an adequate warning.

286.   Defendant knew, or should have known, that the alternator and its associated components including, but not limited to, the alternator's voltage regulator and the connector that attached the alternator to the engine wiring harness, were defective and susceptible to failure under expected conditions and that purchasers and servicers of the alternator and its associated components could not appreciate the risk caused by the defect nor could they adequately identify and remediate the potential defect because of inadequate instructions, warnings and service bulletins provided by the Defendant.

287.   Defendant failed to inform Plaintiff's Insured as to the alternator and its associated components' susceptibility for sudden catastrophic failure and fire.

288.   Defendant failed to warn consumers and servicers of the alternator and its associated components that the identified defects in the alternator, the alternator's voltage regulator and the wiring connector that attached the alternator to the engine wiring harness could cause electrical malfunctions and/or failures that could result in a fire.

289.   The alternator and its associated components were defective due to inadequate warnings and inadequate inspection and testing and inadequate reporting regarding the results of quality control testing and safety inspections or lack thereof.

290.   Had Plaintiff's Insured been adequately warned/instructed concerning the likelihood that, and the manner in which, the alternator and its associated components could suffer a catastrophic electrical failure and fire, they would have taken steps to avoid the fire that occurred.

291.   Defendant Arrowhead, upon learning that its alternator and associated components could suffer catastrophic failures and fires, had a post-sale duty to warn consumers and servicers of the possibility that catastrophic failures and fires could result even when the alternator and its associated components were used for their intended purposes.

292.   The alternator and its associated components were distributed with no warnings or, if any, with inadequate warnings for the danger presented.

293.   A product is defective because of inadequate instruction or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor

or, a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

294.   A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed.  A warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated.  An adequate warning not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings may also be inadequate based on their form, manner of expression or lack of exigency.

295.   The alternator and its associated components were defective because Defendant Arrowhead failed to give reasonable warnings of the danger posed by the defects in the alternator and its associated components; and/or failed to give reasonably complete instructions on the proper use of the alternator and its associated components; and/or failed to provide reasonable warnings regarding the likelihood that the defects in the alternator and its associated components could start a fire; and/or failed to provide complete and understandable instructions regarding the manner in which any identified defects in the alternator and its associated components should be remediated when Defendant, by exercising reasonable diligence, could have made such warnings and/or instructions available to Plaintiff's Insured.

296.   As the manufacturer and/or seller of a consumer product, Defendant owed a duty to Plaintiff's Insured to provide adequate warnings and/or instructions.

297.   Defendant breached this duty because the alternator and its associated components provided no warning/instruction or the warning/instruction was inadequate in the following ways:

a.      Defendant knew or should have known Defendant's alternator and its associated components provided no warning of their defects;

b.      Defendant knew or should have known Defendant's warnings, if any, were inadequate because they failed to disclose all inherent risks;

c.      Defendant knew or should have known Defendant's warnings, if any, were inadequate because they failed to convey a fair indication of the nature of the dangers involved;

d.      Defendant knew or should have known Defendant's warnings, if any, were inadequate because they failed to warn with a degree of intensity demanded by the nature of the risk;

e.      Defendant knew or should have known Defendant's warnings, if any, were inadequate because they failed to communicate sufficient information as to the inherent dangers;

f.      Defendant knew or should have known Defendant's warnings, if any, were inadequate because they failed to warn of dangers that arise during known or reasonably foreseeable uses of the product;

g.      Defendant knew or should have known Defendant's warnings, instructions, service bulletins and/or recalls failed to warn of the specific risks posed by the defects in the alternator and its associated components including, but not limited to, catastrophic electrical failures and fires;

h.      Defendant knew or should have known Defendant's warnings, instructions, service bulletins and/or recalls failed to provide reasonable and understandable instructions regarding the correct manner in which any defects in

the alternator and its associated components could be identified and remediated; and

      i.     Defendant knew or should have known Defendant's warnings, instructions, service bulletins and/or recalls were inadequate in other ways, under the circumstances, to be determined.

298.   As a direct and proximate result of the Defendant's aforesaid negligent acts and/or omissions, for which Defendant Arrowhead is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

299.   As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

## COUNT XXI - BREACH OF WARRANTY
## (ARROWHEAD ENGINEERED PRODUCTS, INC.)

300.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

301.   Defendant Arrowhead is a merchant with regard to the alternator and its associated components.

302.   Defendant Arrowhead's alternator and its associated components are goods.

303.   Defendant Arrowhead's implied warranty of merchantability accompanied the sale of the alternator and its associated components.

304.   Defendant Arrowhead warranted that the alternator and its associated components were fit for ordinary use.

305.   The materials, design, and manufacture of the alternator and its associated components made it defective and unfit for the ordinary purposes for which they are typically used.  The alternator and its associated components are not fit for ordinary use.

306.   Any effort by the Defendant to disclaim or limit its responsibility for its defective alternator and associated components would be unconscionable under the circumstances because Defendant knew, or should have known, its alternator and associated components were unfit for normal use.  Through its conduct, Defendant breached its implied warranty of merchantability and is liable to Plaintiff's Insured.

307.   Defendant breached its warranties in one or more of the following ways:

     a.    Failing to manufacture and/or design the alternator and its associated components in a safe manner;

     b.    Selling and/or distributing a defective alternator and associated components that subjected Plaintiff's Insured and its property to unreasonable risks of harm;

     c.    Failing to design, manufacture and test its alternator and associated components to ensure they were safe for their intended uses;

     d.    Failing to act as a reasonably prudent company would have under the same or similar circumstances; and

     e.    Breaching its warranties in other ways to be determined through discovery.

308.    As a direct and proximate result of the Defendant's aforesaid breach of warranty, for which Defendant Arrowhead is liable, Plaintiff's Insured suffered damage to its real and business property as well as the loss of the use of said property, extra expenses, damage to the property of others and other incidental and consequential damages in an amount in excess of $2.9 million.

309.    As a result of the payments made to its insured, and pursuant to the terms and conditions of the Policy, Plaintiff is legally, equitably and contractually subrogated to the rights of its insured against Defendant Arrowhead to the extent of such payments.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sentry Select Insurance Company, as subrogee of Precision, Inc., d/b/a Precision Boats, prays for judgment against all Defendants and each of them as follows:

1.    Monetary damages exceeding $2.9 million in an amount to be proven at trial;

2.    Pre-judgment interest where allowable by law;

3.    Post-judgement interest;

4.    Attorney's fees and costs of suit pursuant to I.C. §§12-121, 12-123 (in the event Defendants frivolously defend this action), and Idaho Rule of Civil Procedure 54, and as otherwise allowable by law, and in the event of default in the amount of $4,000.00; and

5.    Such other and further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.

DATED this _20th_ day of October, 2021.

RUCHTI & BECK LAW OFFICES

JAMES D. RUCHTI
*Attorneys for Plaintiff*

Electronically Filed
11/30/2021 5:02 PM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: Mary Anne Griffith, Deputy Clerk

**AFFIDAVIT OF SERVICE**

| Case:<br>CV10-21-6208 | Court:<br>IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT, STATE OF IDAHO, IN AND FOR THE COUNTY OF BONNEVILLE | County:<br>BONNEVILLE, ID | Job:<br>6376610 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>Sentry Select Insurance | | **Defendant / Respondent:**<br>Skier's Choice, Inc., et al. | |
| **Received by:** | | **For:**<br>RUCHTI & BECK LAW OFFICES | |
| **To be served upon:**<br>ARROWHEAD ENGINEERED PRODUCTS, INC., c/o CT Corporation System, Inc., as Registered Agent | | | |

I, Remington Quackenbush, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  MARTINA ASHMAN, INTAKE SPECIALIST, 1010 DALE STREET N, ST. PAUL, MN 55117
**Manner of Service:**  Registered Agent, Nov 22, 2021, 12:26 pm CST
**Documents:**  Summons, Complaint and Demand for Jury Trial

**Additional Comments:**
1) Successful Attempt: Nov 22, 2021, 12:26 pm CST at 1010 DALE STREET N, ST. PAUL, MN 55117 received by MARTINA ASHMAN, INTAKE SPECIALIST. Age: 30; Ethnicity: Caucasian; Gender: Female; Weight: 130; Height: 5'4"; Hair: Brown;

_____     11/22/2021
Remington Quackenbush          Date

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

November 22, 2021
Date

Philip J Ekman
NOTARY PUBLIC
MINNESOTA
My Commission Expires  Jan. 31 2025

Electronically Filed
11/30/2021 5:02 PM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: Mary Anne Griffith, Deputy Clerk

**AFFIDAVIT OF SERVICE**

| Case: CV10-21-6208 | Court: DISTRICT COURT SEVENTH JUDICIAL DISTRICT BONNEVILLE COUNTY IDAHO | County: | Job: 6379053 |
|---|---|---|---|
| **Plaintiff / Petitioner:** SENTRY INSURANCE | | **Defendant / Respondent:** SKIERS CHOICE | |
| **Received by:** BLOUNT COUNTY PROCESS SERVICE | | **For:** RUCHTI & BECK, PLLC | |
| **To be served upon:** SKIERS CHOICE | | | |

I, Robert Gooden, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   RICHARD TINKER REGISTERED AGENT, 1717 HENRY G LANE ST, MARYVILLE, TN 37801-3701

Manner of Service:   Registered Agent, Nov 22, 2021, 10:15 am EST

Documents:   SKIERS CHOICE SUMMONS. SKIERS CHOICE COMPLAINT

**Additional Comments:**
1) Successful Attempt: Nov 22, 2021, 10:15 am EST at 1717 HENRY G LANE ST, MARYVILLE, TN 37801-3701 received by RICHARD TINKER REGISTERED AGENT. Age: 55; Ethnicity: Caucasian; Gender: Male; Weight: 200; Height: 6'; Hair: Brown; Eyes: Blue;

_Robert Gooden_            NOV 23-21
Robert Gooden                Date           10-23-21

BLOUNT COUNTY PROCESS SERVICE
P O BOX 1044
Louisville , tn 37777-1044
(865)388-1003

_Subscribed and sworn to before me by the affiant who is personally known to me._

_Kelsey R Bales_
Notary Public

11/23/21         08/23/22
Date              Commission Expires

KELSEY R. BALES
STATE OF TENNESSEE
NOTARY PUBLIC
COUNTY OF BLOUNT

Electronically Filed
12/6/2021 8:58 AM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: John Frey, Deputy Clerk

Stephen Thomas, ISB No. 2326
Benjamin C. Ritchie, ISB No. 7210
Austin Strobel, ISB No. 9803
HAWLEY TROXELL ENNIS & HAWLEY LLP
2010 Jennie Lee Drive
Idaho Falls, ID 83404
Telephone:  208.529.3005
Facsimile:  208-529-3065
Email: sthomas@hawleytroxell.com
        britchie@hawleytroxell.com
        astrobel@hawleytroxell.com

*Attorneys for Defendant, Skier's Choice, Inc.*

**IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT
OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BONNEVILLE**

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY, as subrogee of PRECISION, INC., d/b/a PRECISION BOATS,<br><br>Plaintiff,<br><br>vs.<br><br>SKIER'S CHOICE, INC.; INDMAR PRODUCTS CO., INC.; ARROWHEAD ENGINEERED PRODUCTS, INC.; and/or JOHN DOES I-X, whose true names are unknown,<br><br>Defendants. | Case No. CV10-21-6208<br><br>**NOTICE OF APPEARANCE** |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

Notice is hereby given that Stephen Thomas, Benjamin C. Ritchie and Austin Strobel of

Hawley Troxell Ennis & Hawley LLP, hereby enter their appearance in this action on behalf of

Skier's Choice, Inc.  All documents and pleadings filed herein should be duly and regularly

NOTICE OF APPEARANCE - 1

01585.0079.14322071.1

served upon the undersigned at 2010 Jennie Lee Drive, Idaho Falls, ID 83404 or by email at

britchie@hawleytroxell.com.

DATED THIS 6th day of December, 2021.

HAWLEY TROXELL ENNIS & HAWLEY LLP


By: /s/Benjamin C. Ritchie

Benjamin C. Ritchie, ISB No. 7210
*Attorneys for Defendant, Skier's Choice, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 6th day of December, 2021, I caused to be served a true copy of the foregoing NOTICE OF APPEARANCE by the method indicated below, and addressed to each of the following:

James D. Ruchti
Ruchti & Beck Law Offices
Oakley Building
1950 E. Clark St., Ste. 200
Pocatello, ID 83201

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ E-mail  james@idaholaw.us;
rb-efile@idaholaw.us
☐ Facsimile
☒ iCourt

*/s/Benjamin C. Ritchie*
Benjamin C. Ritchie, ISB No. 7210

NOTICE OF APPEARANCE - 3

Electronically Filed
12/7/2021 10:41 AM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: Ryan Sprowls, Deputy Clerk

## AFFIDAVIT OF SERVICE

**State of Idaho**                                            **County of Bonneville**

Case Number: CV10-21-6208

Plaintiff:
**Sentry Select Insurance Company, as subrogee of Precision, Inc.,
d/b/a/ Precision Boats**

vs.

Defendant:
**Skier's Choice, Inc.; Indmar Products Co., Inc.; Arrowhead
Engineered Products, Inc.; and/or John Does I-X, whose true
names are unknown**

Received by Professional Process Servers, Inc on the 22nd day of November, 2021 at 9:21 am to be
served on **Indmar Products Co., Inc. c/o Richard C Rowe, Jr., Registered Agent, 7192 Locke Rd,
Millington, TN 38053**.

I, George Perry, being duly sworn, depose and say that on the **2nd day of December, 2021** at **10:56
am, I:**

served a **BUSINESS** by delivering a true copy of the **Summons and Complaint and Demand For Jury
Trial** with the date and hour of service endorsed thereon by me, to:   **Richard C Rowe, Jr.** as **Registered
Agent** for **Indmar Products Co., Inc.** , at the address of: **5400 Old Millington Rd, Millington, TN 38053,**
and informed said person of the content therein, in compliance with state statues.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process
Server, in good standing, in the judicial circuit in which the process was served.

**George Perry**
Process Server

Subscribed and Sworn to before me on the 6th
day of December, 2021 by the affiant who is
personally known to me.

NOTARY PUBLIC

**Professional Process Servers, Inc**
ppsmemphis1@yahoo.com
**5240 Mendenhall Park Place
Memphis, TN 38115
(901) 452-8986**

Our Job Serial Number: MPK-2021004892



Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.2c

Electronically Filed
12/13/2021 1:28 PM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: Ryan Sprowls, Deputy Clerk

Stephen Thomas, ISB No. 2326
Benjamin C. Ritchie, ISB No. 7210
Austin Strobel, ISB No. 9803
HAWLEY TROXELL ENNIS & HAWLEY LLP
2010 Jennie Lee Drive
Idaho Falls, ID 83404
Telephone:  208.529.3005
Facsimile:  208-529-3065
Email: sthomas@hawleytroxell.com
        britchie@hawleytroxell.com
        astrobel@hawleytroxell.com

*Attorneys for Defendant, Skier's Choice, Inc.*

## IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT
## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BONNEVILLE

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY, as subrogee of PRECISION, INC., d/b/a PRECISION BOATS,<br><br>                    Plaintiff,<br><br>vs.<br><br>SKIER'S CHOICE, INC.; INDMAR PRODUCTS CO., INC.; ARROWHEAD ENGINEERED PRODUCTS, INC.; and/or JOHN DOES I-X, whose true names are unknown,<br><br>                    Defendants. | Case No. CV10-21-6208<br><br>**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** |

Defendant Skier's Choice, Inc. ("Skier's Choice") respectfully answers Plaintiff Sentry Select Insurance Company as subrogee of Precision Inc., d/b/a Precision Boats ("Sentry" or the "Plaintiff") Complaint and Demand for Jury Trial (the "Complaint") in correspondingly numbered paragraphs and raises affirmative defenses as follows:

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT
AND DEMAND FOR JURY TRIAL** - 1

**FIRST DEFENSE**

The Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

Skier's Choice denies each and every allegation of the Complaint not specifically admitted herein.

**I.**
**NATURE OF THE ACTION**

1.       Skier's Choice denies the allegations contained in Paragraph 1 of the Complaint.

2.       Responding to the allegations contained in Paragraph 2 of the Complaint, Skier's Choice admits that it designed, manufactured, and sold the 2020 Skier's Choice Supra SL Model boat (the "Boat") incorporating many parts, components and accessories designed and manufactured by other entities.  Skier's Choice denies the remaining allegations contained in Paragraph 2 of the Complaint.

3.       Responding to the allegations contained in Paragraph 3 of the Complaint, Skier's Choice admits that it designed, manufactured, and sold the Boat incorporating many parts, components and accessories designed and manufactured by other entities.  Skier's Choice denies the remaining allegations contained in Paragraph 3 of the Complaint.

4.       Skier's Choice admits the allegations contained in Paragraph 4 of the Complaint.

5.       Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 5 of the Complaint and, therefore, denies the same.

6.       Responding to the allegations contained in Paragraph 6 of the Complaint, Skier's Choice asserts that the service bulletin is the best evidence of the contents thereof and otherwise denies Paragraph 6.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 2

7.     Responding to the allegations contained in Paragraph 7 of the Complaint, Skier's Choice asserts that the recall is the best evidence of the contents thereof and otherwise denies Paragraph 7.

8.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 8 of the Complaint and, therefore, denies the same.

9.     Skier's Choice denies the allegations contained in Paragraph 9 of the Complaint.

## II.
## PARTIES

10.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 10 of the Complaint and, therefore, denies the same.

11.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 11 of the Complaint and, therefore, denies the same.

12.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 12 of the Complaint and, therefore, denies the same.

13.     Skier's Choice admits the allegations contained in Paragraph 13 of the Complaint.

14.     Skier's Choice admits the allegations contained in Paragraph 14 of the Complaint.

15.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 15 of the Complaint and, therefore, denies the same.

16.     Skier's Choice admits the allegations contained in Paragraph 16 of the Complaint.

17.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 17 of the Complaint and, therefore, denies the same.

18.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 18 of the Complaint and, therefore, denies the same.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 3

19.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 19 of the Complaint and, therefore, denies the same.

20.     The allegations contained in Paragraph 20 contain improper group pleading.  If Skier's Choice is required to respond, Skier's Choice denies.

21.     The allegations contained in Paragraph 21 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

22.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 22 of the Complaint and, therefore, denies the same.

23.     Responding to the allegations contained in Paragraph 23, Skier's Choice admits that it sold the Boat.  Skier's Choice lacks information and belief to respond to the remaining allegations contained in Paragraph 23 and, therefore, denies the same.

24.     The allegations contained in Paragraph 24 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

### III.
### VENUE AND JURISDICTION

25.     Responding to the allegations contained in Paragraph 25 of the Complaint, Skier's Choice admits that jurisdiction and venue may be proper in this court, but it also reserves the right to remove this case to federal court.

26.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 26 of the Complaint and, therefore, denies the same.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 4

**IV.**
**FACTUAL ALLEGATIONS**

27.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 27 of the Complaint and, therefore, denies the same.

28.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 28 of the Complaint and, therefore, denies the same.

29.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 29 of the Complaint and, therefore, denies the same.

30.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 30 of the Complaint and, therefore, denies the same.

31.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 31 of the Complaint and, therefore, denies the same.

32.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 32 of the Complaint and, therefore, denies the same.

33.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 33 of the Complaint and, therefore, denies the same.

34.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 34 of the Complaint and, therefore, denies the same.

35.     Responding to the allegations contained in Paragraph 35 of the Complaint, Skier's Choice admits that the Boat started on fire on or about October 27, 2019 and that it was recorded on a security video.  Skier's Choice denies any remaining allegations contained in Paragraph 35 of the Complaint.

36.     Responding to the allegations contained in Paragraph 36 of the Complaint, Skier's Choice admits that the fire spread throughout Precision Boat's building.  Skier's Choice lacks information and belief to respond to the remaining allegations contained in Paragraph 36 of the Complaint and, therefore, denies the same.

37.     Skier's Choice denies the allegations contained in Paragraph 37 of the Complaint.

38.     Responding to the allegations contained in Paragraph 38 of the Complaint, Skier's Choice asserts that the service bulletin is the best evidence of the contents thereof and otherwise denies Paragraph 38.

39.     Responding to the allegations contained in Paragraph 39 of the Complaint, Skier's Choice asserts that the recall is the best evidence of the contents thereof and otherwise denies Paragraph 39.

40.     Responding to the allegations contained in Paragraph 40 of the Complaint, Skier's Choice asserts that the recall is the best evidence of the contents thereof and otherwise denies Paragraph 40.

41.     Responding to the allegations contained in Paragraph 41 of the Complaint, Skier's Choice admits that it designed, manufactured, and sold the Boat incorporating many parts, components and accessories designed and manufactured by other entities.  Skier's Choice further states that any written warranty is the best evidence of the contents thereof.  A number of the allegations contained in Paragraph 41 of the Complaint also contain legal conclusions to which no response is required.  Skier's Choice otherwise denies Paragraph 41 of the Complaint.

42.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 42 of the Complaint and, therefore, denies the same.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 6

43.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 43 of the Complaint and, therefore, denies the same.

44.     Skier's Choice lacks information and belief to respond to the allegations contained in Paragraph 44 of the Complaint and, therefore, denies the same.

45.     Skier's Choice denies the allegations contained in Paragraph 45 of the Complaint.

46.     Skier's Choice denies the allegations contained in Paragraph 46 of the Complaint.

47.     Skier's Choice denies the allegations contained in Paragraph 47 of the Complaint.

## V.
## CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY DESIGN DEFECT (SKIER'S CHOICE, INC.)

48.     In response to Paragraph 48 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

49.     Skier's Choice denies the allegations contained in Paragraph 49 of the Complaint.

50.     Skier's Choice denies the allegations contained in Paragraph 50 of the Complaint.

51.     Skier's Choice denies the allegations contained in Paragraph 51 of the Complaint.

52.     The allegations contained in Paragraph 52 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

53.     Skier's Choice denies the allegations contained in Paragraph 53 of the Complaint.

54.     Skier's Choice denies the allegations contained in Paragraph 54 of the Complaint.

55.     Skier's Choice denies the allegations contained in Paragraph 55 of the Complaint, including all subparagraphs.

56.     Skier's Choice denies the allegations contained in Paragraph 56 of the Complaint.

57.     Skier's Choice denies the allegations contained in Paragraph 57 of the Complaint.

**COUNT II**
**STRICT LIABILITY MANUFACTURING DEFECT (SKIER'S CHOICE)**

58.     In response to Paragraph 58 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

59.     Skier's Choice denies the allegations contained in Paragraph 59 of the Complaint.

60.     Skier's Choice denies the allegations contained in Paragraph 60 of the Complaint.

61.     Skier's Choice denies the allegations contained in Paragraph 61 of the Complaint.

62.     The allegations contained in Paragraph 62 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

63.     Skier's Choice denies the allegations contained in Paragraph 63 of the Complaint.

64.     Skier's Choice denies the allegations contained in Paragraph 64 of the Complaint.

65.     Skier's Choice denies the allegations contained in Paragraph 65 of the Complaint, including all subparagraphs.

66.     Skier's Choice denies the allegations contained in Paragraph 66 of the Complaint.

67.     Skier's Choice denies the allegations contained in Paragraph 67 of the Complaint.

**COUNT III**
**STRICT LIABILITY FAILURE TO WARN/INADEQUATE**
**WARNINGS/INADEQUATE INSTRUCTION (SKIER'S CHOICE)**

68.     In response to Paragraph 68 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

69.     Skier's Choice denies the allegations contained in Paragraph 69 of the Complaint.

70.    Skier's Choice denies the allegations contained in Paragraph 70 of the Complaint.

71.    Skier's Choice denies the allegations contained in Paragraph 71 of the Complaint.

72.    The allegations contained in Paragraph 72 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

73.    Skier's Choice denies the allegations contained in Paragraph 73 of the Complaint.

74.    Skier's Choice denies the allegations contained in Paragraph 74 of the Complaint.

75.    Skier's Choice denies the allegations contained in Paragraph 75 of the Complaint.

76.    Skier's Choice denies the allegations contained in Paragraph 76 of the Complaint.

77.    Skier's Choice denies the allegations contained in Paragraph 77 of the Complaint.

78.    Skier's Choice denies the allegations contained in Paragraph 78 of the Complaint.

79.    Skier's Choice denies the allegations contained in Paragraph 79 of the Complaint.

80.    Skier's Choice denies the allegations contained in Paragraph 80 of the Complaint.

81.    The allegations contained in Paragraph 81 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

82.    The allegations contained in Paragraph 82 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

83.    Skier's Choice denies the allegations contained in Paragraph 83 of the Complaint.

84.    Skier's Choice denies the allegations contained in Paragraph 84 of the Complaint, including all subparagraphs.

85.     Skier's Choice denies the allegations contained in Paragraph 85 of the Complaint.

86.     Skier's Choice denies the allegations contained in Paragraph 86 of the Complaint.

## COUNT IV
## NEGLIGENCE NEGLIGENT DESIGN (SKIER'S CHOICE)

87.     In response to Paragraph 87 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

88.     Skier's Choice denies the allegations contained in Paragraph 88 of the Complaint.

89.     Skier's Choice denies the allegations contained in Paragraph 89 of the Complaint.

90.     The allegations contained in Paragraph 90 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

91.     Skier's Choice denies the allegations contained in Paragraph 91 of the Complaint.

92.     Skier's Choice denies the allegations contained in Paragraph 92 of the Complaint.

93.     Skier's Choice denies the allegations contained in Paragraph 93 of the Complaint.

94.     Skier's Choice denies the allegations contained in Paragraph 94 of the Complaint, including all subparagraphs.

95.     Skier's Choice denies the allegations contained in Paragraph 95 of the Complaint.

96.     Skier's Choice denies the allegations contained in Paragraph 96 of the Complaint.

## COUNT V
## NEGLIGENCE NEGLIGENT DESIGN (SKIER'S CHOICE)

97.     In response to Paragraph 97 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

98.     Skier's Choice denies the allegations contained in Paragraph 98 of the Complaint.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT**
**AND DEMAND FOR JURY TRIAL** - 10

99.     Skier's Choice denies the allegations contained in Paragraph 99 of the Complaint.

100.    The allegations contained in Paragraph 100 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

101.    Skier's Choice denies the allegations contained in Paragraph 101 of the Complaint.

102.    Skier's Choice denies the allegations contained in Paragraph 102 of the Complaint.

103.    Skier's Choice denies the allegations contained in Paragraph 103 of the Complaint.

104.    Skier's Choice denies the allegations contained in Paragraph 104 of the Complaint, including all subparagraphs.

105.    Skier's Choice denies the allegations contained in Paragraph 105 of the Complaint.

106.    Skier's Choice denies the allegations contained in Paragraph 106 of the Complaint.

**COUNT VI**
**FAILURE TO WARN/INADEQUATE WARNINGS (SKIER'S CHOICE)**

107.    In response to Paragraph 107 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

108.    Skier's Choice denies the allegations contained in Paragraph 108 of the Complaint.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT**
**AND DEMAND FOR JURY TRIAL** - 11

109.     Skier's Choice denies the allegations contained in Paragraph 109 of the Complaint.

110.     The allegations contained in Paragraph 110 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

111.     Skier's Choice denies the allegations contained in Paragraph 111 of the Complaint.

112.     Skier's Choice denies the allegations contained in Paragraph 112 of the Complaint.

113.     Skier's Choice denies the allegations contained in Paragraph 113 of the Complaint.

114.     Skier's Choice denies the allegations contained in Paragraph 114 of the Complaint.

115.     Skier's Choice denies the allegations contained in Paragraph 115 of the Complaint.

116.     Skier's Choice denies the allegations contained in Paragraph 116 of the Complaint.

117.     Skier's Choice denies the allegations contained in Paragraph 117 of the Complaint.

118.     Skier's Choice denies the allegations contained in Paragraph 118 of the Complaint.

119.    The allegations contained in Paragraph 119 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

120.    The allegations contained in Paragraph 120 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

121.    Skier's Choice denies the allegations contained in Paragraph 121 of the Complaint.

122.    Skier's Choice denies the allegations contained in Paragraph 122 of the Complaint.

123.    Skier's Choice denies the allegations contained in Paragraph 123 of the Complaint, including all subparagraphs.

124.    Skier's Choice denies the allegations contained in Paragraph 124 of the Complaint.

125.    Skier's Choice denies the allegations contained in Paragraph 125 of the Complaint.

**COUNT VII**
**BREACH OF WARRANTY (SKIER'S CHOICE)**

126.    In response to Paragraph 126 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

127.    The allegations contained in Paragraph 127 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT**
**AND DEMAND FOR JURY TRIAL** - 13

128.   The allegations contained in Paragraph 128 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

129.   The allegations contained in Paragraph 129 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

130.   The allegations contained in Paragraph 130 of the Complaint contain legal conclusions to which no response is required.  If Skier's Choice is required to respond, Skier's Choice denies.

131.   Skier's Choice denies the allegations contained in Paragraph 131 of the Complaint.

132.   Skier's Choice denies the allegations contained in Paragraph 132 of the Complaint.

133.   Skier's Choice denies the allegations contained in Paragraph 133 of the Complaint, including all subparagraphs.

134.   Skier's Choice denies the allegations contained in Paragraph 134 of the Complaint.

135.   Skier's Choice denies the allegations contained in Paragraph 135 of the Complaint.

## COUNT VIII
## STRICT LIABILITY DESIGN DEFECT (INDMAR PRODUCTS CO., INC.)

136.   In response to Paragraph 136 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 14

137.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

138.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

139.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

140.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

141.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

142.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

143.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

144.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

### COUNT IX
### STRICT LIABILITY MANUFACTURING DEFECT (INDMAR PRODUCTS CO., INC.)

145.     In response to Paragraph 145 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

146.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

147.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

148.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

149.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

150.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 16

151.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

152.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

153.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

154.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT X
### STRICT LIABILITY FAILURE TO WARN/INADEQUATE WARNINGS.INADEQUATE INSTRUCTION (INDMAR PRODUCTS CO., INC.)

155.     In response to Paragraph 155 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

156.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

157.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 17

158.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

159.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

160.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

161.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

162.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

163.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

164.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

165.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

166.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

167.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

168.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

169.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

170.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

171.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

172.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

173.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XI
## NEGLIGENCE NEGLIGENT DESIGN (INDMAR PRODUCTS CO., INC.)

174.    In response to Paragraph 174 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

175.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

176.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

177.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

178.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 20

179.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

180.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

181.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

182.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

183.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XII
## NEGLIGENCE NEGLIGENT DESIGN (INDMAR PRODUCTS CO., INC.)

184.     In response to Paragraph 184 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

185.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

186.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

187.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

188.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

189.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

190.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

191.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

192.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

193.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XIII
## FAILURE TO WARN/INADEQUATE WARNINGS/INADEQUATE INSTRUCTION
### (INDMAR PRODUCTS CO., INC.)

194.    In response to Paragraph 194 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

195.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

196.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

197.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

198.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

199.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

200.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

201.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

202.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

203.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

204.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

205.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

206.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

207.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

208.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

209.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

210.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

211.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

212.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XIV
## BREACH OF WARRANTY (INDMAR PRODUCTS CO., INC.)

213.    In response to Paragraph 213 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT
AND DEMAND FOR JURY TRIAL** - 25

214.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

215.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

216.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

217.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

218.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

219.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

220.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

221.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

222.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XV
## BREACH OF WARRANTY (INDMAR PRODUCTS CO., INC.)

223.    In response to Paragraph 223 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

224.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

225.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

226.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

227.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

228.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

229.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

230.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

231.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XVI
## STRICT LIABILITY MANUFACTURING DEFECT (ARROWHEAD ENGINEERED PRODUCTS, INC.)

232.    In response to Paragraph 232 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

233.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

234.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

235.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

236.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

237.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

238.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

239.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

240.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

241.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XVII
## STRICT LIABILITY FAILURE TO WARN/INADEQUATE
## WARNINGS/INADEQUATE INSTRUCTION (ARROWHEAD ENGINEERED
## PRODUCTS, INC.)

242.    In response to Paragraph 242 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

243.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

244.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

245.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

246.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

247.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

248.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

249.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

250.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

251.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

252.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

253.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

254.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

255.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

256.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

257.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

258.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

259.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

260.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XVIII
## NEGLIGENCE NEGLIGENT DESIGN (ARROWHEAD ENGINEERED PRODUCTS, INC.)

261.     In response to Paragraph 261 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

262.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

263.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

264.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

265.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

266.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

267.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

268.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

269.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

270.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XIX
## NEGLIGENCE NEGLIGENT DESIGN (ARROWHEAD ENGINEERED PRODUCTS, INC.)

271.     In response to Paragraph 271 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

272.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

273.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

274.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

275.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

276.     This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

277.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

278.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

279.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

280.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XX
### NEGLIGENCE FAILURE TO WARN/INADEQUATE WARNINGS/INADEQUATE INSTRUCTION (ARROWHEAD ENGINEERED PRODUCTS, INC.)

281.    In response to Paragraph 281 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

282.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

283.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 35

284.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

285.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

286.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

287.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

288.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

289.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

290.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

291.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

292.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

293.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

294.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

295.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

296.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

297.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

298.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

299.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## COUNT XXI
## BREACH OF WARRANTY (ARROWHEAD ENGINEERED PRODUCTS, INC.)

300.    In response to Paragraph 300 of Plaintiff's Complaint, Skier's Choice realleges and reincorporates the preceding responses as if fully stated herein.

301.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

302.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

303.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

304.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 38

305.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

306.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

307.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

308.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

309.    This allegation is not made against Skier's Choice, therefore, Skier's Choice has no response.  If Skier's Choice is required to respond, Skier's Choice denies based upon lack of knowledge or belief.

## VI.
## PRAYER FOR RELIEF

Skier's Choice denies that Plaintiff is entitled to any of the relief prayed for in its Prayer for Relief.

## REQUEST FOR JURY TRIAL

Skier's Choice likewise requests a jury trial on all issues.

## THIRD DEFENSE

Plaintiff may have failed to mitigate its damages.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 39

## FOURTH DEFENSE

Plaintiff's claims are barred by the economic loss rule.

## FIFTH DEFENSE

Plaintiff's claims may be barred by its failure to join necessary and indispensable parties.

## SIXTH DEFENSE

The damages alleged by Plaintiff were proximately caused, if at all, by the Plaintiff's or the Plaintiff's subrogor's own negligence or fault, such negligence or fault being equal to or greater than any alleged negligence or fault of Skier's Choice, such that Plaintiff's or the Plaintiff's subrogor's negligence or fault bars or reduces any recovery to which Plaintiff might otherwise be entitled.  In asserting this defense, Skier's Choice does not admit any fault, responsibility, liability, or damage; to the contrary, Skier's Choice specifically denies any and all allegations of fault, responsibility, liability, or damage contained in the Complaint.

## SEVENTH DEFENSE

Plaintiff's damages, if any, were caused by the acts or omissions of third parties not under the control of Skier's Choice, and for which Skier's Choice can have no liability.

## EIGHTH DEFENSE

Plaintiff's damages, if any, were proximately caused, in whole or in part, by the superseding or intervening acts or omissions of persons or entities other than Skier's Choice

## NINTH DEFENSE

There was no privity of contract between Plaintiff and Skier's Choice and, therefore, Plaintiff's for purported breach of warranty are barred.

## TENTH DEFENSE

Plaintiff's claims are barred or reduced by the learned intermediary doctrine and/or the sophisticated purchaser/user doctrine.

## ELEVENTH DEFENSE

Plaintiff is barred from recovery due to the application of the doctrines of estoppel, laches, unclean hands and/or waiver.

## TWELFTH DEFENSE

The product(s) allegedly involved in this case, if any, conformed to the state of the art at the time of sale and were designed, manufactured and tested pursuant to generally recognized and prevailing standards, and in conformance with any statutes, regulations, and requirements that governed the products at the time of the design, manufacture and sale.

## THIRTEENTH DEFENSE

On information and belief, Skier's Choice alleges that after it left the custody and control of Skier's Choice, the product which allegedly injured Plaintiff, if any, was altered, changed, or otherwise modified by parties, individuals, or entities other than Skier's Choice, and said modifications, changes, alternations were a proximate cause of the damages alleged by Plaintiff, if any there were.

## FOURTEENTH DEFENSE

Prior to and at the time of the alleged injuries to Plaintiff, the products which allegedly caused or contributed to said injuries were misused and abused, and were not being used in a manner in which they were intended to be used.  Such misuse and abuse caused and/or contributed to the loss, injury or damages, if any, incurred by Plaintiffs and/or Plaintiffs' decedent.

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 41

## FIFTEENTH DEFENSE

Skier's Choice is a product seller under Idaho Code § 6-1407 and is, therefore, exempt from liability.

## CAVEAT

By raising the aforementioned defenses, Skier's Choice makes no admission of any kind and does not assume any burden of proof or production not otherwise properly resting upon it in this lawsuit.  Rather, Skier's Choice merely identifies defenses to preserve them for all proper uses under applicable law.  Skier's Choice has yet to complete discovery in this case, the result of which may reveal additional defenses to Plaintiff's Complaint.  As such, Skier's Choice reserves the right to supplement, modify or delete defenses after discovery is completed.

## REQUEST FOR ATTORNEYS' FEES

Skier's Choice has been required to retain the services of counsel to defend against the allegations in Plaintiff's Complaint and is, therefore, entitled to costs and attorneys' fees pursuant to federal and Idaho law.

## PRAYER FOR RELIEF

WHEREFORE, Skier's Choice prays for entry of judgment, as follows:

1.      That Plaintiff's Complaint be dismissed and Plaintiff take nothing thereby;

2.      That Skier's Choice be awarded reasonable attorneys' fees and costs necessarily incurred in defending this action; and

3.      For such other and further relief as the Court deems just and proper.

DATED THIS 13th day of December, 2021.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By */s/ Benjamin C. Ritchie*
    Stephen Thomas, ISB No. 2326
    Benjamin C. Ritchie, ISB No. 7210
    Austin Strobel, ISB No. 9803
    *Attorneys for Defendant, Skier's Choice, Inc.*

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT
AND DEMAND FOR JURY TRIAL** - 43

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of December, 2021, I caused to be served a true copy of the foregoing DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL by the method indicated below, and addressed to each of the following:

James D. Ruchti
Ruchti & Beck Law Offices
Oakley Building
1950 E. Clark St., Ste. 200
Pocatello, ID 83201

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ E-mail  james@idaholaw.us; rb-efile@idaholaw.us
☐ Facsimile
☑ iCourt

*/s/ Benjamin C. Ritchie*
Stephen Thomas, ISB No. 2326
Benjamin C. Ritchie, ISB No. 7210
Austin Strobel, ISB No. 9803

**DEFENDANT SKIER'S CHOICE, INC.'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** - 44